Argued October 3, reargued in banc December 16, 1924, reversed January 2, argued on rehearing April 14, affirmed on rehearing June 30, 1925.

# STATE v. F. A. McDANIEL.

(231 Pac. 965; 237 Pac. 373.)

**Searches and Seizures—Search on Search-warrant Only on Probable Cause Judicially Determined.**

1. Search of a person by an officer under authority of Constitution, Article I, Section 9 and Sections 1855, 1856, Or. L., can only be on search-warrant issued on probable cause, appearing on oath or affirmation, and judicially determined.

**Arrest—Conditions for Search as Incident of Arrest.**

2. For search of a man by an officer without search-warrant, merely as an incident of an arrest for some crime, the man searched must at the time be in the legal custody of the officer, and must be lawfully a prisoner.

**Searches and Seizures—Search Without Warrant, and not Incident of Lawful Arrest, Within Prohibition of Constitution.**

3. If search of a man by an officer without a search-warrant be not under conditions authorizing it as an incident of an arrest, it is within the prohibition of Constitution, Article I, Section 9, against illegal searches.

**Searches and Seizures—Provisions of Constitution and Statute Mandatory, and Strictly Construed in Favor of Individual.**

4. Provisions of Constitution, Article I, Section 9, as to searches and seizures, and of the statute as to procedure thereunder, are mandatory, to be strictly construed in favor of the individual, and, if not followed, search and seizure are void.

**Arrest—Officer Entitled to Arrest for Crime Committed in His Presence may not First Without Search-warrant Search the Person.**

5. While an officer may, under Section 1763, Or. L., arrest for a crime committed in his presence, he may not without search-warrant, previous to the arrest, search the person for instrumentalities of the crime, though having probable cause to believe the person has them.

---

1. See 24 R. C. L. 702.

2. Right to search person of one under arrest, see note in 3 Ann. Cas. 354. See, also, 2 R. C. L. 467.

3. Admissibility of evidence secured by search and seizure, see notes in 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182.

Admissibility against defendant of documents or articles taken from him, see notes in 59 L. R. A. 465; 8 L. R. A. (N. S.) 762; 34 L. R. A. (N. S.) 58; L. R. A. 1915B, 834. See, also, 24 R. C. L. 717.

**Arrest—Arrest must Precede Search Without Warrant.**

6. That search without search-warrant may be legal, it must follow, not precede, arrest.

**Arrest—Restraint During Search not Arrest, Warranting Search.**

7. Mere restraint for purpose of search is not arrest to answer a crime, which will authorize search without warrant.

**Arrest—Searches and Seizures—Drunkenness in Public Place Does not Authorize Search of Person Without Arrest or Search-warrant.**

8. Drunkenness in public place in violation of Section 2144—1, Or. L., though in the presence of officers, does not authorize them without arrest or search-warrant to search the person for liquor.

**Arrest—What was Said or not Said at Time Relevant on Question of Arrest Being Made.**

9. While it is not necessary to establish a lawful arrest for a crime committed in officers' presence that they notify him that they are arresting him therefor, what was said or not said at the time is relevant on the question of whether there was any arrest.

**Arrest—That Person was not Afterwards Charged With Drunkenness in Public Place Conclusive That He was not Arrested Therefor When Searched.**

10. That person was not afterwards charged with drunkenness in public place, in presence of officers is conclusive that when they searched him, saying nothing of purpose to arrest him for such crime, they did not arrest therefor; "arrest," under Section 1753, Or. L., being the taking of a person into custody that he may be held to answer for a crime.

**Arrest—Criminal Law—Under Facts, Arrest Followed Search, and Search was Illegal, and Evidence Illegally Obtained.**

11. Where officer without search-warrant pinioned a person's arms, without statement as to arrest, searched him, and after finding liquor on him said, "I will place you under arrest for having liquor in your possession," the arrest followed the search, and the search was illegal and the evidence illegally obtained.

**Criminal Law—Evidence Obtained by Illegal Search Excluded Where Application for Its Return Made Before Trial.**

12. Ordinarily court will not delay trial, on objection first made there, to inquire whether evidence was illegally obtained, but where there has been application before trial for its return as obtained by illegal search, and it is so correctly found, objection to the evidence will be sustained at the trial.

**Courts—State Courts not Bound by Federal Practice as to Exclusion of Evidence Illegally Obtained.**

13. State courts are not bound by federal practice, as declared by United States Supreme Court, as to rule for exclusion of evidence obtained by illegal search.

---

9. What constitutes arrest and when complete, see notes in 19 Am. Dec. 485; 61 Am. Dec. 151. See, also, 2 R. C. L. 464.
12. See 24 R. C. L. 724; 10 R. C. L. 933.

**Courts—State Court Adopting Rule of Practice as Decided by Federal Court Adopted Reasons in Federal Opinions.**

14. The Supreme Court of Oregon having adopted the practice as declared by the Supreme Court of the United States, as to exclusion of evidence illegally obtained, "for the same reasons which recommend it to that court," adopted those reasons as disclosed by the cited decisions of that court.

**Courts—Prior Decision as Rule for Excluding Evidence Illegally Obtained Followed.**

15. The Supreme Court is bound by the law established by its previous decision that, where evidence is illegally obtained, it will be excluded at the trial, provided that before trial, on timely petition therefor, it was correctly established that the evidence was in fact illegally obtained.

**Constitutional Law—Criminal Law—Searches and Seizures—Inhibition of Constitution as to Searches not Limited to Legislature— Evidence Inadmissible Without Statutory Rule.**

16. Constitution, Article I, Section 9, in terms inhibiting law violating right against unreasonable search and seizure, and providing conditions for issuing warrant, *held* addressed, not only to the legislature, but every officer of the state, including the judiciary, so that, though there is no state law authorizing unconstitutional seizure, evidence obtained by such a seizure is objectionable, and remedy is not against the officers merely for trespass.

**Searches and Seizures—Search With Warrant Reasonable.**

17. A search with a warrant, so long as its commands are followed, is reasonable, because lawful.

**Searches and Seizures—Search Without Warrant not Reasonable.**

18. A search without a warrant, where not an incident of a preceding arrest, is unreasonable because illegal.

**Criminal Law—Information Obtained from Article Taken on Illegal Search and Seizure Objectionable as Evidence.**

19. Information obtained from article taken on illegal search and seizure is objectionable as evidence, as is the article itself.

**Intoxicating Liquors—Intoxicating Liquor not Per Se Contraband Relative to Return When Illegally Seized.**

20. In view of Sections 2224—4, 2224—14, 2224—42, Or. L., intoxicating liquor can be the subject of private legal ownership, and is not, *per se*, contraband, within rule against return, in case of illegal search and seizure, of a contraband article, which cannot be legally owned.

---

16. Admissibility of evidence obtained by illegal search and seizure, see notes in 24 A. L. R. 1408; 32 A. L. R. 408.     See, also, 24 R. C. L. 704.

20. See 3 R. C. L. Supp. 1384.

Criminal Law—Object of Petition to Return to Challenge Competency of Evidence.

21. The real object of petition to return property obtained by illegal search is to challenge the competency of the evidence, so that it is immaterial that the property may be contraband, which will not be returned.

## ON REHEARING.

Arrest—Validity of Search as Incidental to Arrest Does not Depend on Existence of Warrant.

22. Validity of search as incidental to arrest does not depend on existence of warrant, but does depend on lawfulness of arrest.

Arrest—When Person is "Drunk" in a Legal Sense Stated.

23. A person is drunk in a legal sense, so as to justify arrest without warrant, when he is so far under influence of liquor that he is not entirely himself, and his unusual appearance attracts attention of others.

Arrest—Reasonable Cause to Believe a Person Intoxicated Justifies Arrest Without Warrant.

24. Reasonable cause, based on personal observation, to believe a person to be intoxicated is sufficient to justify an arrest without warrant.

Arrest—Arrest as for Offense Committed in Officers' Presence and Search Held Warranted.

25. Officers who, by personal observation of manner of defendant's walk, flushed face and by smell of his breath, arrived at conclusion that he was drunk *held* authorized in making arrest without warrant and search.

Arrest—"Arrest" for Offense Committed in Officers' Presence Held not Illegal Because Defendant was Subsequently Charged With Different Offense.

26. Under Sections 1753, 1757, Or. L., defining "arrest" as taking of person into custody that he "may" be held to answer for "a" crime, and providing that arrest may be made by an actual restraint, or by submission to custody of officer, *held* arrest for offense of drunkenness in public place or driving car while in intoxicated condition, and search of defendant was not unlawful because defendant was thereafter charged with an offense of which search showed him guilty, rather than offense for which he was arrested.

Arrest—Where Arrest for Offense Committed in Officers' Presence and Search are Practically Simultaneous, It is Immaterial Whether Arrest Preceded or Followed Search.

27. Where arrest for offense committed in officers' presence and search are practically simultaneous, it is immaterial whether arrest preceded or followed search.

---

21. See 10 R. C. L. 933.
22. See 2 R. C. L. 467.
23. See 2 R. C. L. 454.

Intoxicating Liquors—Mere Fact That Whisky may be Found in
   Possession of One Searched Does not Legalize a Search Unlawful
   When Undertaken.

   28.  Mere fact that whisky may be found in possession of one
searched does not legalize a search unlawful when undertaken.

Criminal Law—Error of Court in Holding Search and Seizure Un-
   lawful cannot be Complained of by Defendant.

   29.  Error of court in holding search and seizure unlawful cannot
be complained of by defendant.

---

   See (1) 5 C. J. 434.   (2) 19 C. J. 791.   (3) 5 C. J. 399, 417.   (4)
5 C. J. 403, 417.   (5)  5 C. J. 403.   (6)  5 C. J. 434.   (7)  33 C, J.
674.   (8)  17 C. J. 358.

From Benton: G. F. SKIPWORTH, Judge.

In Banc.

REVERSED.

For appellant there was a brief and oral argu-
ment by *Mr. A. D. Leedy.*

For respondent there was a brief over the names
of *Mr. Arthur Clarke* and *Mr. Fred McHenry,* Dis-
trict Attorney, with an oral argument by *Mr. Clarke.*

PIPES, J.—The defendant was indicted for hav-
ing intoxicating liquor in his possession and was
tried on the twenty-second day of December, 1922, in
the Justice's Court in Benton County, Oregon. He
was there convicted and appealed to the Circuit Court,
where he was again convicted.

It appears that two deputy sheriffs, Robinson and
Plunkett, had seized the defendant and searched his
person for intoxicating liquor and, a pint flask of
liquor being found on his person, he was arrested

---

   It should be noted that the original opinion of the court reversed
the lower court, while on rehearing the lower court was affirmed.
So far as the head-notes of the original opinion conflict with those
of the opinion on rehearing, they are superseded by the latter.—
REPORTER.

for the crime. Prior to the trial the defendant filed a timely application in the Justice's Court for a return of the liquor to him, alleging that it had been illegally seized in a search of his person. This application having been denied, it was renewed in the Circuit Court before the trial in that court. The Circuit Court heard the evidence concerning the search and seizure and decided that the search was unlawful and that the whisky obtained thereby was illegally obtained. Notwithstanding that decision, upon the trial the court admitted evidence, over the objection and exception of the defendant, of the two officers to the effect that the flask so seized by them was three fourths full of whisky. The whisky had been submitted for a chemical examination to a professor of chemistry at the Agricultural College, who testified, over the objection and exception of defendant, that a part of the contents of the bottle contained 34 per cent of alcohol. The circumstances of the search and seizure were related in their testimony by the officers. As they will be particularly referred to in the opinion, we will not recite them in this statement.

The defendant was convicted and from a judgment of conviction brings his case here by appeal. The sole question to be determined is whether the court erred in admitting the testimony of the officers and of the chemist derived from an examination of the whisky.

If the search here was legal, the evidence obtained thereby was admissible at the trial and the court committed no error in overruling the objections to it.

If the search was not legal, the evidence was illegally obtained. Whether, notwithstanding this fact, it was admissible depends upon another question, which we will meet in its proper place. The question of the legality of this search of defendant's person, then,

meets us at the threshold of the case, and must be decided.

An officer has authority to search the person of a man when he holds a search-warrant issued to him by a magistrate, in pursuance of a provision of the Constitution of this state, and the law passed in pursuance thereof, which are as follows:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search or seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Article I, Section 9, Constitution of Oregon.

"The magistrate must, before issuing the warrant, examine, on oath, the complainant and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them." Section 1855, Or. L.

"Thereupon, if the magistrate be satisfied that there is probable cause to believe in the existence of the grounds of the application, he must issue the warrant, * * ." Section 1856, Or. L.

Or he may search a man who is in his custody by virtue of a legal arrest to answer some criminal charge pending or in contemplation.

1. These two authorities differ from each other in purpose and procedure. In the cases covered by the constitutional provision, the search, if under a search-warrant, is authorized where the public has an interest in the discovery, as of stolen goods, concealed weapons, unlawful possession of intoxicating liquors, etc. But the constitutional provision is at once permissive and prohibitive. It confers authority and limits its exercise within the limits defined by the provision. This search can only be made upon probable cause, appearing by oath or affirmation, and judicially de-

115 Or.—13

termined. Otherwise the search is not only not authorized; it is prohibited.

2. Under the second authority, the search is an incident of an arrest for some crime. The man searched must at the time be in the legal custody of the officer. He must be lawfully a prisoner.

3. It is admitted here that the officers had no search-warrant. If the search was legal, it must come within the authority of the officers to search the prisoner in their legal custody to answer for some crime. If it does not come within that rule, then it comes within the prohibition of the constitution against illegal searches.

The cases are not in conflict on these propositions. They are recognized everywhere, and are established by this court. Upon the right to search a person under arrest: *State* v. *McDaniel*, 39 Or. 161 (65 Pac. 520); *State* v. *Wilkins*, 72 Or. 77, 80 (142 Pac. 589); *State* v. *Laundy*, 103 Or. 443 (204 Pac. 958, 206 Pac. 290).

4. The constitutional provision and the procedure thereunder provided by statute are to be strictly construed in favor of the complainant, and, if not followed, the search and seizure are void. The provisions are mandatory: *Smith* v. *McDuffee*, 72 Or. 276, 284 (142 Pac. 558, 143 Pac. 929, Ann. Cas. 1916D, 947); *Nally* v. *Richmond*, 105 Or. 462, 468 (209 Pac. 871).

5. An officer may arrest a person for a crime committed in his presence: Section 1763, Or. L.; *State* v. *Laundy, supra*. And if he arrests him and has him in custody he may search him. But if he does not arrest him for some crime known to the laws, he cannot search him without a search-warrant, although he may believe and, in fact, may have probable cause to believe, that the person has on his

person instrumentalities of crime  He cannot himself decide that probable cause exists for the search, nor act upon such decision. The determination of the existence of probable cause for the search is a judicial function, and is not confided to the executive officer: Sections 1855, 1856, Or. L., *supra*.

If the officer, therefore, did not have the defendant in custody on some criminal charge, at the time of the search, however strongly his breath, walk and conduct might indicate that he had intoxicating liquor on his person, the officer had no legal authority to search him for it.  The officer had two courses to pursue: to arrest defendant for the crime committed in his presence, if he was there committing a crime, and then search his prisoner for the whisky, or, if not that, obtain a search-warrant and search him, under the authority of his warrant.

6. The differences of opinion that exist on this record do not arise from conflict in the law concerning search and seizure, but on the different interpretations of the evidence.  The question is whether the evidence proves an arrest and a search, or a search and arrest.   In the former case, the search was legal. In the latter case, it was illegal.

7. It should be premised that every unlawful search of a person *in invitum* involves a restraint of his liberty during the time of the search and, therefore, in a sense, is an arrest.  This may not be physical force, but may be compulsion by legislative or judicial authority or duress by the officer under color of his office: *Boyd* v. *United States,* 116 U. S. 616 (29 L. Ed. 746, 6 Sup. Ct. Rep. 524); *Hale* v. *Henkel,* 201 U. S. 43 (50 L. Ed. 652, 26 Sup. Ct. Rep. 370, see, also, Rose's U. S. Notes).

But that restraint is not an arrest to answer a crime, but the means of making the search.  When

the Constitution prohibits a search without a warrant it prohibits the force necessary to accomplish it.

8. It is contended by respondent, in support of the legality of the search, that the defendant was drunk in a public place and was therefore guilty of a crime committed in the presence of the officers. Section 2244—1, Or. L., provides:

" * * It shall be unlawful for any person to be drunk in any highway, street, or in any public place or building * * ."

Assuming, without deciding, that the evidence tended to show that defendant was drunk in a public place, and in the presence of the officers, that would have justified his arrest for that crime. But the fact of his drunkenness in their presence, without an arrest, would not justify a search, without a warrant, for the instruments of the crime on his person. That is the very thing that the Constitution and the law passed in pursuance thereof forbid.

9, 10. We go to the evidence to discover whether the officers arrested the defendant for being drunk in a public place. Neither officer notified the defendant that they were arresting him for drunkenness in a public place. It is said that that is not necessary to establish a lawful arrest for a crime committed in the officer's presence. That is true. But what was said or not said at the time is relevant on the question of whether there was any arrest at all. Neither officer testified in court that he arrested the defendant for being drunk, or had any intention to do so. But the question is concluded by the fact that no charge of that crime was lodged in any court. The statute provides what an arrest is. Section 1753, Or. L., provides:

"Arrest is the taking of a person into custody, that he may be held to answer for a crime."

The very best evidence that he was not arrested for the crime of drunkenness in a public place is that he was not afterwards charged with the crime. If he was not arrested that he might be held for that crime, he was not arrested. A legal arrest gets its legal significance from the purpose of it—to answer for a crime. We will not hold that an arrest has been made to answer for a crime that has never been charged against the defendant.

Mr. Robinson, one of the deputy sheriffs making the search, testified that in the building where the court was held, he smelled whisky on defendant's breath; that his overcoat was buttoned awry; that his face was flushed. The defendant left the building to go to his car, standing in the street. Mr. Robinson and Mr. Plunkett, the other deputy, followed him to the car. Up to that time the defendant had not been accosted, and certainly had not been restrained of his liberty. The witness detailed what transpired as follows:

"Q. I wish you would state just what transpired there. A. Well, we walked up; we got pretty close and Mr. McDaniel started his car, and Mr. Plunkett said, 'Hold on there, Mac, we are going to search the car and you,' and he says, 'What is the idea?' And he says, 'You smell too much like a bottle of moonshine to me, and from your appearance—We are going to search the car.' And he says, 'Go ahead and search the car.' And after we searched the car and could not find anything, Mr. Plunkett says, 'What will we do now?' And I said, 'We will search you.' And Plunkett says, 'We are going to search you.' And he jumped out of the car on the other side over this woman's feet, and in the meantime I had walked on the left hand side of the car, where Mr. Plunkett was.

"Q. Go ahead. A. And when he jumped out, Mr. Plunkett went in front of the car and met him and got hold of him, and I came on the rear of the car,

and caught Mr. McDaniel and held his arms back while Mr. Plunkett searched his front pockets, and he could not find anything, and Mr. 'Mac' kind of squirmed around—" * *

"Q. Go right ahead. A. The bottle in his hip pocket came up against me, and I felt pretty sure, and knowed there was something in his pocket, and I surmised what it was.

"Q. What did you do? A. When Mr. Plunkett raised up from searching him, in front, I knew if there was any foul play or anything, he could protect himself. I just turned Mac's arms loose and I raised his overcoat up and I taken the bottle out of his hip pocket, and I said, 'How about that?' And he said, 'That is mine.' And Plunkett says, 'I will place you under arrest for having liquor in your possession.' "

It will thus be seen that the first words the witness said to the defendant were, "Hold on there, Mac, we are going to search the car and you." This was repeated. The defendant said, "Go ahead and search the car," which the officers did. Finding no liquor, the witness said to defendant, "We are going to search you." The defendant left his car, and the officers caught him and proceeded to do what Mr. Robinson told him they would do. In the words of the witness, he "caught Mr. McDaniel and held his arms back while Mr. Plunkett searched his front pockets." Mr. Plunkett not finding anything, Mr. Robinson proceeded: I just turned Mac's arms loose and I raised his overcoat up, and I taken that bottle out of his hip pocket, and I said, 'How about that?' And he said, 'That is mine.' "

Mr. Plunkett testified to the same effect. It is, therefore, quite clear from this evidence that the officers did not think they had evidence upon which to found a charge of possessing liquor illegally. From

the condition of defendant described by them, they no doubt strongly and justifiably suspected it. They were unwilling to arrest the defendant to answer for the crime of having liquor in his possession when they could produce no direct evidence to support it. In that state of mind, they determined to get the evidence to support it, if it existed on the person of defendant. That was the purpose of the search, and the force used to make it was not an arrest to answer for a crime, within the meaning of the statute, Section 1753, Or. L., but an arrest to make the search.

11. What the officers actually did accords with their words. The search began when the violence began. What they did speaks as loud as what they said. They pinioned his arms, in order to conduct a search of his person. *Res ipsa loquitur.* The legal character of the act they were doing was then fixed by its own circumstances. We cannot give it a different legal significance by what it is assumed they could have done, but did not do. We have no power to reconstruct the transaction. It was the handiwork of the officers, and comes to us as they made it. We cannot import into it the fiction of a legal arrest, which the reality contradicts.

After they found the liquor, then for the first time Mr. Plunkett said, ''I will place you under arrest for having liquor in your possession.'' The arrest for the crime for which defendant was tried and convicted followed and did not precede the search. The officers searched defendant's person for evidence of a crime, without a warrant, and found it, and then, and not until then, they arrested him for the crime. The search was illegal and the evidence illegally obtained.

12. The next question is, Was the evidence thus obtained admissible? The ordinary rule, well sus-

tained by the state and federal cases, is that the court will not delay the trial, on objection first made there, to inquire whether the evidence was illegally obtained. We need not go abroad for that rule. It is the rule in this court: *State* v. *McDaniel,* 39 Or. 161 (65 Pac. 520); *State* v. *Wilkins,* 72 Or. 77, 80 (142 Pac. 589); *State* v. *Ware,* 79 Or. 367, 377 (154 Pac. 905, 155 Pac. 364); *State* v. *Laundy, supra.*

But there is an exception to that rule. It is that when there is a timely application to the court before the trial for the return of the property because it has been illegally obtained by the officers, the court will try the issue, and order or refuse the return, according as the facts may disclose. But the rule does not stop with the order. If the court finds the issue for the defendant, it will at the trial sustain the objections to the evidence. This exception is approved and applied in a number of cases in the Supreme Court of the United States: *Weeks* v. *United States,* 232 U. S. 383 (58 L. Ed. 652, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341; *Gouled* v. *United States,* 255 U. S. 298 (65 L. Ed. 647, 41 Sup. Ct. Rep. 261); *Amos* v. *United States,* 255 U. S. 313 (65 L. Ed. 654, 41 Sup. Ct. Rep. 266, see also, Rose's U. S. Notes and Supp.).

13. It is contended, and justly, that the state courts are not bound by the federal authorities. Many cases are cited in respondent's brief to show that the great weight of state authority is against the federal rule. We are relieved from following that discussion, because this court has already followed the rule announced by the national court.

In *State* v. *Laundy, supra,* the defendant was indicted for criminal syndicalism. He was arrested without a warrant. The officers entered the hall where the assembly was in progress. The crime

charged was a felony. The court held that the arrest of the defendant was lawful. The court then continued:

"An arresting officer who makes a lawful arrest may search his prisoner, and in the language of Bishop, 'if he finds on the prisoner's person, or otherwise in his possession, either goods or money which he reasonably believes to be connected with the supposed crime, as its fruits, or as the instruments with which it was committed, or as supplying proofs relating to the transaction, he may take and hold them to be disposed of as the court directs.' Bishop's New Criminal Procedure, § 211.

"If the arrest of a prisoner is lawful, a search of the person of the prisoner is lawful; and the officer making such lawful arrest and lawful search may take from the prisoner not only instruments of the crime but also such articles as may be of use as evidence on the trial: *Weeks* v. *United States*, 232 U. S. 383 (68 L. Ed. 652, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341, see, also, Rose's U. S. Notes). * * The search is justifiable as an incident to the lawful arrest." *State* v. *Laundy*, 103 Or. 443, 496 [204 Pac. 958, 975].

The defendant, Laundy, complained that the taking of thirty-seven exhibits in the hall, and his membership-book after his arrest was a violation of his constitutional rights. In order to test the question he filed a timely petition before the trial for an order for the return of the articles taken.

That was done in the instant case. The legal efficacy of such a petition was involved there, as it is here. It was there decided, after mature deliberation, in an exhaustive opinion by Mr. Justice HARRIS, speaking for this court. For a full understanding of the scope of the ruling we can do no better than quote the language:

" * * * The inquiry is, Were the rights of the defendant violated when the policeman removed the thirty-seven exhibits from the hall, and when the membership card was taken from him at the police station? As a preliminary, it is appropriate to say, in the language used by the national Supreme Court in *Weeks* v. *United States*: 'This protection' against unreasonable search and seizure guaranteed by our state Constitution 'reaches all alike whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted' with the enforcement of the laws.

"The Supreme Court of the United States in a series of decisions has made plain the rule of practice to be followed by the federal courts in order to secure to 'all alike' the protection intended to be given by the national Constitution. An accused person whose property is taken by an officer of the federal government in violation of the Fourth Amendment is entitled to an order of the court, upon the filing of a timely petition, directing the return of the wrongfully seized property. Ordinarily such a petition must be filed prior to the commencement of the trial, because as a general rule the courts will not, after the trial has begun, suspend the trial of the accused and frame and determine a collateral issue concerning the means by which an article, competent as evidence in the trial, was obtained. This court, it is true, has held in conformity with the rulings of most of the other courts, including the Supreme Court of the United States, that the relevancy of a given article is not affected by the circumstances that it was wrongfully seized; and hence inquiry will not ordinarily be made during the trial concerning a collateral issue: [Citing authorities.] If, however, the accused does not know until the paper or other article is offered in evidence that it was obtained by an unlawful seizure, he is nevertheless entitled at that time to an order of the court directing a return of the property. [Citing authorities.] This rule of practice sanctioned by the Supreme Court of the United

States ought, for the same reasons which recommended it to the court, to be adopted and followed by the courts of this state. In the instant case the defendant filed a timely petition, and therefore if his constitutional rights were violated his petition ought to have been allowed. The question to be answered then is, Was the right granted by Article I, Section 9, of our state Constitution violated? If the membership book and all of the thirty-seven exhibits were taken lawfully, or if they were taken without violating any of Laundy's rights, he cannot complain.'' 103 Or. 493, 495 (204 Pac. 974).

The exact question that arose in that case arises here, and a succinct statement of the question is contained in those words of the opinion:

''The policemen who entered the hall and arrested Laundy did so without a warrant of arrest and without a search warrant; and, therefore, if their conduct in taking the membership book and the thirty-seven exhibits removed from the hall was lawful, it was so *only because the arrest was lawful.* * * '' 103 Or. 495 (204 Pac. 975).

The defendant failed there to obtain the order sought, not because his petition was not an authorized procedure, for the court held that it was, but because the facts brought his case within the rule permitting a search and seizure after a lawful arrest, and not within the law prohibiting a search and seizure without a warrant where there has been no antecedent lawful arrest. The decision is clear that but for the fact that the search and seizure occurred while he was in lawful custody of the officer at the time, the order for the return would have been made.

14. Since this court has adopted the rule of the Supreme Court of the United States, not as necessarily binding upon this court, but for ''the same reasons which recommended it to that court,'' we go to the

decisions of that court, cited, to discover what those reasons are. The importance of this question, not to this defendant only, but to every citizen of the state, justifies us in quoting at length the "reasons" of the Supreme Court decisions which this court has so explicitly adopted in the Laundy case.

In the Weeks' case the United States marshal, without process, visited the room of defendant and took therefrom letters tending to show his guilt. These letters were placed in the control of the district attorney, who offered them in evidence. The defendant made timely application for their return, which was denied, and they were received in evidence over the objections of the defendant. The court said:

" * * We shall deal with the Fourth Amendment, which provides:

" 'The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.'

"The history of this Amendment is given with particularity in the opinion of Mr. Justice BRADLEY, speaking for the court in *Boyd* v. *United States,* 116 U. S. 616 (29 L. Ed. 746, 6 Sup. Ct. Rep. 524, see, also, Rose's U. S. Notes). As was there shown, it took its origin in the determination of the framers of the Amendments to the Federal Constitution to provide for that instrument a Bill of Rights, securing to the American people, among other things, those safeguards which had grown up in England to protect the people from unreasonable searches and seizures, such as were permitted under the general warrants issued under authority of the Government by which there had been invasions of the home and privacy of the citizens and the seizure of their private papers

in support of charges, real or imaginary, made against them. Such practices had also received sanction under warrants and seizures under the so-called writs of assistance, issued in the American colonies. See 2 Watson on the Constitution, 1414 et seq. Resistance to these practices had established the principle which was enacted into the fundamental law in the Fourth Amendment, that a man's house was his castle and not to be invaded by any general authority to search and seize his goods and papers. Judge Cooley, in his Constitutional Limitations, pp. 425, 426, in treating of this feature of our Constitution, said: 'The maxim that "every man's house is his castle," is made a part of our constitutional law in the clauses prohibiting unreasonable searches and seizures, and has always been looked upon as of high value to the citizen.' 'Accordingly,' says Lieber in his work on Civil Liberty and Self-Government, 62, in speaking of the English law in this respect, 'no man's house can be forcibly opened, or he or his goods be carried away after it has thus been forced, except in cases of felony, and then the sheriff must be furnished with a warrant, and take great care lest he commit a trespass. This principle is jealously insisted upon.' In *Ex parte Jackson,* 96 U. S. 727, 733 (24 L. Ed. 877, see, also, Rose's U. S. Notes), this court recognized the principle of protection as applicable to letters and sealed packages in the mail, and held that consistently with this guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures such matter could only be opened and examined upon warrants issued on oath, or affirmation particularly describing the thing to be seized, 'as is required when papers are subjected to search in one's own household.'

"In the Boyd case, *supra,* after citing Lord Camden's judgment in *Entick* v. *Carrington,* 19 Howell's State Trials, 1029, Mr. Justice BRADLEY said (630):

" 'The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious cir-

cumstances; they apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offence,—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment.' [*Weeks* v. *United States,* 232 U. S. 389, 391 (58 L. Ed. 652, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 343, 344, see, also, Rose's U. S. Notes).]

" * * The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land. The United States Marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information and describing with reasonable particularity the thing for which the search was to be made. Instead, he acted without sanction of law, doubtless prompted by the desire to bring further proof to the aid of the Government, and under color of his office undertook to make a seizure of private papers in direct violation of the constitutional prohibition against such action. Under such circumstances, without sworn information and particular description, not even an order of court would have justified such procedure, much less was it within the authority of the United States Marshal to thus invade the house and privacy of the accused. * * [Pages 393, 394.]

" ' * * While a search ordinarily implies a quest by an officer of the law, and a seizure contemplates a forcible dispossession of the owner, still, as was held in the Boyd Case, the substance of the offense is

the compulsory production of private papers, whether under a search warrant or a *subpoena duces tecum,* against which the person, be he individual or corporation, is entitled to protection.' If such a seizure under the authority of a warrant supposed to be legal, constitutes a violation of the constitutional protection, *a fortiori* does the attempt of an officer of the United States, the United States Marshal, acting under color of his office, without even the sanction of a warrant, constitute an invasion of the rights within the protection afforded by the Fourth Amendment." Page 397.

In the Gouled case the court said:

"Upon authority of the Boyd case, *supra,* this second question must also be answered in the affirmative. In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case. * * [*Gouled* v. *United States,* 255 U. S. 306 (65 L. Ed. 647, 41 Sup. Ct. Rep, 264, see, also, Rose's U. S. Notes Supp.).]

"The fourth question reads: 'If such papers so taken are admitted in evidence against the person from whose house or office they were taken, such person being then on trial for the crime of which he was accused in the affidavit for warrant,—is such admission in evidence a violation of the 5th amendment?'

"The same papers being involved, the answer to this question must be in the affirmative for, they having been seized in an unconstitutional search, to permit them to be used in evidence would be, in effect, as ruled in the Boyd Case, to compel the defendant to become a witness against himself. * * Page 311.

"The papers being of 'evidential value only' and having been unlawfully seized, this question really is, whether, it having been decided on a motion before trial that they should not be returned to the defendant, the trial court, when objection was made to their use on the trial, was bound to again inquire as to the unconstitutional origin of the possession of them. It is plain that the trial court acted upon the rule, wisely adopted, that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained. While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances. We think rather that it is a rule to be used to secure the ends of justice under the circumstances presented by each case, and where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission or a motion for their exclusion and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." Pages 312, 313.

15. The Laundy case, adopting these reasons, is decisive of this case as to the law governing it. It is that when evidence is illegally obtained, it will be excluded at the trial, provided that before the trial, upon a timely petition therefor, it is correctly decided that the evidence was in fact illegally obtained. The court below decided, before the trial, on timely application of the defendant, that the evidence was illegally obtained. If that decision was correct, then the court erred in admitting the testimony as procured. The law being established by a previous decision of the court, we are bound by it. So the case

must go here purely upon a question of fact to be derived from the evidence. We have decided the fact favorably to the defendant, and the law does the rest.

16. Our attention is called to the proposition that the Constitution is addressed only to the legislature, and there being no law of the state authorizing unconstitutional searches, the officers, at most, were trespassers, and the remedy is against them. But the Constitution is addressed not only to the legislature, but to every officer of the state, including the judiciary. It is said by the Supreme Court of the United States, in the case whose reasoning is adopted by this court in the Laundy case, "The Fourth Amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law acting under the legislature or *judicial* sanction. This protection is equally extended to the action of the government, and officers of the law acting under it. To sanction such proceedings would be to affirm by *judicial decision* a manifest neglect if not an open defiance of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action." *Weeks* v. *United States, supra,* p. 394; *Boyd* v. *United States, supra; Adams* v. *New York,* 192 U. S. 585 (48 L. Ed. 575, 24 Sup. Ct. Rep. 372, see, also Rose's U. S. notes).

Besides, the trespass of the officers and the remedy against them has no relation to the competency of the evidence, which is the question here. That is to be determined upon its own merits. If the evidence is made competent by the trespass and the remedy against the trespasser, every confession

115 Or.—14

wrung by an officer from a defendant by force and duress would have to be admitted because the defendant had a remedy against the officer.

17, 18. Another question meets us. May a search, without a warrant, be reasonable? It is said that a search with a warrant may be unreasonable, and a search without a warrant be reasonable and lawful, if reasonable. The first proposition is a legal impossibility. An officer with a warrant duly issued who follows its commands cannot make an unreasonable search. It is reasonable because it is lawful. He may exceed his authority, and the search be unreasonable, but in that case he is no longer with a warrant. He loses its protection. It dies in his hands, and he is a trespasser *ab initio*.

Nor is the second proposition any sounder. If he makes a search without a warrant, however polite, gentle, or considerate he may be, the search is unreasonable, because it is unlawful. The standard of reasonableness is not the conduct of the officer, but the possession of the warrant.

In the Gouled case, *supra,* followed by this court in the Laundy case, the court said:

" * * [Search warrants] 'when issued upon probable cause, supported by oath or affirmation and particularly describing the thing to be searched, and the persons or things to be seized,' searches and seizures made under them, are to be regarded as not unreasonable, and therefore, not prohibited by the Amendment. Searches and seizures are as constitutional under the Amendment when made under valid search warrants, as they are unconstitutional, *because unreasonable*, when made without them—the permission of the Amendment has the same constitutional warrant as the prohibition has, and the definition of the former restrains the scope of the latter. All this is abundantly recognized in the opinion of the Boy and

Weeks' cases. * * ''. *Gouled* v. *United States,* 255
U. S. 308 (65 L. Ed. 647, 41 Sup. Ct. Rep. 264, see,
also, Rose's U. S. Notes Supp.).

19. The bottle of whisky was not offered or ad-
mitted in evidence. But there was not a word of
evidence in the case tending to show the guilt of
defendant that was not derived from the search.
The officers testified that the bottle was three fourths
full of whisky, and seemed to be able to identify
it as ''moonshine.'' Some of the liquor was sub-
mitted to a chemist, who examined it and testified
that it contained 34 per cent of alcohol.

The whisky bottle and contents are what is termed
''real'' evidence. It is not at all essential, in any
case, to put it in evidence. The information of the
witnesses, obtained from the bottle of liquor, was
just as effective and just as much the result of the
illegal search as was the possession of it by the
officers. The distinction between them is not ap-
pealing. The same question was made in the case
of *Silverthorne Lumber Co.* v. *United States,* 251
U. S. 385, 392 (64 L. Ed. 319, 40 Sup. Ct. Rep. 182,
183, see, also Rose's U. S. Notes Supp.). Docu-
ments obtained through an illegal search were copied,
and from them an indictment found. This was con-
demned by the court, which said:

''If knowledge of them is gained from an indepen-
dent source, they may be proved like any others, but
the knowledge gained by the government's own wrong
cannot be used by it in the way proposed.''

20. Authorities are cited to the effect that a con-
traband article, which cannot be legally owned, will
not be returned to the defendant. Whatever the law
may be in other states, it cannot be said that intoxi-

cating liquor cannot be the subject of private legal ownership in this state. It is not *per se,* contraband. Its possession is legal, if it was legally obtained before the prohibition act went into effect: Section 2224—4, Or. L. Its possession is lawful when a physician gives it to his patient for medicine: Section 2224—14, Or. L. In a suit against a nuisance, any owner of intoxicating liquor that has been seized may show that it was not used to maintain the nuisance and the statute directs the court to return it to him: Section 2224—42, Or. L.

21. In any event, this contention misconceives the whole purpose of the petition for the return. All of the cases we have cited show that the real object of that procedure is to challenge the competency of the evidence before the trial. The reversals were made because the evidence was erroneously admitted. In the Amos case the court said, "The petition should have been granted, but it having been denied, the motion to strike the evidence should have been sustained." *Amos* v. *United States,* 265 U. S. 317 (65 L. Ed. 654, 41 Sup. Ct. Rep. 267, see, also, Rose's U. S. Notes Supp.). So the evidence is incompetent though the property is not returned. If the question only concerned the right of the defendant to have returned to him a few ounces of moonshine, the matter would not long detain us. We will not be diverted from the vital question—the competency of the evidence. If the liquor is contraband, it is that it is contraband as illegal evidence, and not contraband as contraband that concerns us. We mean to decide that evidence obtained by an illegal search, when the objection to it is timely made, should be excluded, whatever becomes of the real evidence.

The court erred in admitting the testimony, and the case is reversed and remanded.

REVERSED AND REMANDED.

BEAN and RAND, JJ., concur.

BROWN, J., concurs in the result.

COSHOW, J., Dissenting.—On the twenty-second day of December, 1922, the defendant was a deputy game warden of the state.   At that time, two men were on trial charged with having violated the game laws of the state.   Two deputy sheriffs of Benton County were also in attendance upon the trial, which was being held at Philomath in said county before a justice of the peace.   One of the deputy sheriffs was at the time also chief of police of the City of Corvallis in said county.   The defendant, at the time of the trial, delivered to one of the deputy sheriffs warrants for the arrest of the two persons charged with having violated the game laws.   In the conversation between the defendant and the deputy sheriff, while delivering the warrants, the latter observed that the defendant was intoxicated.   His face was flushed, his overcoat "buttoned up wrong," and his breath was laden with the odor of intoxicating liquor. Thereupon, the deputy sheriff requested the other deputy to observe the condition of the defendant. Whereupon, the other deputy approached the defendant and observed the same indications of intoxication.   Immediately afterwards, the defendant left the courtroom and went to his automobile parked in a street of Philomath, a short distance from the building in which the court was being held.   Both deputy sheriffs followed the defendant and observed that his manner of walking indicated that he was

drunk. The defendant got into the automobile, in which was a woman, and started it. Thereupon, the deputy sheriffs halted him, searched his car, but found no liquor. One of the deputy sheriffs then stated that they would search the defendant, who thereupon jumped out of the car as if to get away, but was intercepted and searched, and a pint bottle about three-fourths full of "moonshine" found in one of his hip pockets and taken from him. The liquor was afterwards analyzed and found to contain more than 30 per cent alcohol. Upon finding the liquor on the defendant, he was formally arrested and a complaint lodged against him in the Justice Court, sitting at Philomath, charging him with the unlawful possession of intoxicating liquor. The deputy sheriffs had no search-warrant nor a warrant for the arrest of the defendant. The trial of the defendant on said charge was set for December 29, 1922. On that day and before the hour set for the trial, the defendant

"filed in said justice court his petition for the return to said appellant of the evidence obtained or pretended to be obtained, upon the ground that the appellant was not under lawful arrest and was not under arrest in any manner or at all, and that said search and pretended seizure was in contravention of the constitutional rights of the appellant. This petition was not opposed by the district attorney of Benton County, Oregon, as to the facts or as to the law applicable thereto, and was confessed by said district attorney. Notwithstanding said petition was confessed by said district attorney, the same was denied by said justice court. Thereafter and prior to the commencement of the trial in the said justice court the said district attorney for Benton County, in consequence of said unlawful search and seizure or pretended seizure, filed in said justice court his motion to dismiss said action, which motion was denied

by said justice court, and the cause was then continued on the court's own motion until January 5th, 1923."

On the last-named date, the defendant was convicted in the Justice Court of the crime charged, and an appeal was immediately taken to the Circuit Court for Benton County. Thereafter and before a trial in the Circuit Court, the defendant filed another motion, supported by his affidavit, for the return of the liquor taken from him. This motion was opposed by the district attorney, and, after hearing arguments, the Circuit Court ordered the liquor to be returned. At the trial, the defendant made seasonable objections to all the testimony offered by the state regarding the condition of the defendant at the time he was searched and arrested, the finding of the liquor on his person, the alcoholic contents of the liquor, and all other evidence resulting from the search of the defendant and seizure of the liquor. The objections of the defendant were overruled and exceptions duly saved. The trial resulted in the conviction of the defendant, who was sentenced to pay a fine of $150, and in default thereof, be confined in the county jail of Benton County, Oregon, one day for each $2 of said fine, and further be confined in the county jail of Benton County, Oregon, for a period of twenty days, and to pay the costs and disbursements of the action. The defendant has appealed to this court from that judgment.

The defendant rests his objections to the testimony received over his objections and named above as a violation of his constitutional rights expressed in the fourth and fifth amendments of the federal Constitution, and Article I, Sections 9 and 12 of the Constitution of Oregon. The court's ruling on the admissi-

bility of that testimony is the only error assigned on this appeal.

The deputy sheriffs did not violate either the fourth or fifth amendment to the federal Constitution. Those amendments prohibit either the Congress or federal officers from violating the acts therein forbidden. They do not apply to the state legislatures or officers: *Weeks* v. *United States,* 232 U. S. 383, 398 (58 L. Ed. 652, 658, Ann. Cas. 1915C, 1177, 1182, L. R. A. 1915B, 834, 843, 34 Sup. Ct. Rep. 341, 346, see, also, Rose's U. S. Notes), where we find this language:

"As to the papers and property seized by the policemen, it does not appear that they acted under any claim of federal authority such as would make the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the fourth amendment is not directed to individual misconduct of such officials. Its limitations reach the Federal Government and its agencies. *Boyd Case,* 116 U. S. 616 (29 L. Ed. 746, 6 Sup. Ct. Rep. 524, and see *Twining* v. *New Jersey,* 211 U. S. 78, 53 L. Ed. 97, 29 Sup. Ct. Rep. 14, see, also, Rose's U. S. Notes)."

To the same effect are the decisions of this court: *State* v. *Laundy,* 103 Or. 443, 493 (204 Pac. 958, 206 Pac. 290). The decisions of the United States court, applying the provisions of the fourth and fifth amendments to the federal Constitution, are not controlling. The dignity and learning of that court entitles its decisions to most serious consideration when not controlling. The grave question raised by this appeal

must be decided by construing Article I, Sections 9 and 12 of our state Constitution.

Was the search of the defendant and the seizure of the "moonshine" discovered on the person of the defendant by the officers, without warrant either for such search or for the arrest of the defendant, a violation of Article I, Section 9, of our state Constitution?

Said Section 9 is as follows:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects against unreasonable search or seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The inhibition in this section is directed to the legislature. No law is assailed in this appeal. There is no claim that the search and seizure complained of were made by virtue of any unconstitutional statute or law of the state. It is agreed that the search and seizure were both made without warrant. The officers making the search and seizure were acting without a warrant or other writ. There is no claim by the state that the officers were authorized by any order of any court or any law in conflict with said Section 9 of Article I of our state Constitution. If the officers exceeded their authority, they are subject to civil and criminal liability. If the search was unlawful, they were guilty of assault and battery: 2 R. C. L. 526, note 3, pp. 527, 528, notes 15 and 16, p. 529, notes 4 and 5, p. 539, § 18; 5 C. J. 622, note 73, p. 726, § 192, p. 728, § 194. If the search and seizure were unlawful, it was the duty of the district attorney to have caused the arrest of the offending officers, and prosecuted them for their grave offense. The

violation of said section is a very serious offense and is so recognized by all the authorities. Its enforcement is not secured by ignoring violations thereof, or by refusing to enforce the law against offenders of other statutes.

The inhibition of said Section 9 is not against all searches but only against unreasonable searches. The presence of a warrant is not the sole test of the reasonableness of a search. A search, with a warrant, may be unreasonable, and without a warrant, reasonable: *People* v. *Milone,* 119 Misc. Rep. 22 (195 N. Y. Supp. 488). The authorities are uniform to the effect that any person arrested in a criminal act may be searched by the officers making the arrest, who may seize and retain any property or documents which are evidence of the crime.

In *Weeks* v. *United States,* 232 U. S. 383, 392 (58 L. Ed. 652, Ann. Cas. 1915C, 1177, 1180, 34 Sup. Ct. Rep. 341, 344), relied upon by the defendant, we find this language:

"What then is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. *It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases.* 1 Bishop on Criminal Procedure, § 211; Wharton, Crim. Plead. & Practice (8 ed.), § 60; *Dillon* v. *O'Brien and Davis,* 16 Cox C. C. 245."

In *Youman* v. *Commonwealth,* 189 Ky. 152, 160 (224 S. W. 860, 864, 13 A. L. R. 1303, in p. 1309), we find this language:

"But, if a person is lawfully taken into custody, the right to search him and seize articles in his possession is allowed for the purposes before stated."

The reference in this excerpt is to the following language in the same page:

"And this broad protection against unlawful search and seizure applies with equal force to the person, and *subject to the exception that an arresting officer has the right to search the person of a prisoner lawfully arrested, and take from his person and hold for the disposition of the court any property connected with the offense for which he is arrested that may be used as evidence against him,* or any weapon or thing that might enable the prisoner to escape or do some act of violence, it is as great a violation of the constitution for an officer to search a person, or baggage carried about by him, without a warrant authorizing it, as it is to search his premises."

The opinion in *Youman* v. *Commonwealth,* above, is the main support and principal authority relied upon by the defendant in this appeal. To the same effect is 5 C. J. 434, § 74, also cited by the defendant. 2 R. C. L. 467, also cited by the defendant, in Section 25, says:

"An officer making an arrest has authority to search the person of his prisoner, even against his will, but a search is justifiable only as an incident to a lawful arrest, and if the arrest is unlawful the search is also unlawful."

Every authority, cited by defendant touching the right of the arresting officer to search the person of his prisoner as an incident to a lawful arrest, sustains that right. If, then, the defendant was lawfully arrested, the search and seizure of the "moonshine" was lawful.

Cooley's Constitutional Limitations (7 ed.), 431–433, cited by defendant, is not in conflict with our view. It is not directly in point, but supports the

principle of the right to search the person in the manner ruled by the common law.

Section 1763, Or. L., provides:

"A peace officer may, without warrant, arrest a person,—

"1. For a crime committed or attempted in his presence; * * "

Section 1369, Or. L., defines a crime to be "An act or omission forbidden by law, and punishable upon conviction by either of the following punishments:— " * *

"2. Imprisonment;
"3. "Fine; * * "

Section 2144—1, Or. L., makes it a crime, punishable with both fine and imprisonment, "for any person [this term is sufficiently broad to include a deputy state game-warden] to be drunk in any highway, street or in any public place or building. * * "

Section 2224—22, Or. L., makes it a crime "for any person to carry intoxicating liquor to any dance or dance-hall or other public gathering or to have intoxicating liquor in his possession at such dance or dance-hall. or other public gathering," also punishable by both fine and imprisonment. It cannot be questioned that a place where court is being held, is a public place, and where court is in session, is a public gathering.

Section 2253—1, Or. L., makes it a crime, punishable by both fine and imprisonment, for any person to operate or drive "any automobile, motorcycle or other motor vehicle who becomes or is intoxicated while so engaged in operating or driving such automobile, * * "

It thus appears that when the defendant was arrested he was in the act of committing at least two

crimes, namely, unlawful possession of intoxicating liquor, and being drunk in a public place; and was attempting to commit another, namely, driving an automobile while intoxicated. His arrest was lawful, and consequently, the search and seizure were lawful. The officers, whose acts are complained of by the defendant, would have been neglectful of their duty, had they not arrested and searched the defendant. It would have been reprehensible to have permitted the defendant to have driven his automobile in his drunken condition. He would thereby have endangered his own life, the life of the woman in his automobile, and the life of every person on the highways along which he would have driven.

From *State* v. *Laundy*, 103 Or. 443, 496 (204 Pac. 958, 206 Pac. 290), also cited by appellant, we find this language:

"If the arrest of a prisoner is lawful, a search of the person of the prisoner is lawful; and the officer making such lawful arrest and lawful search may take from the prisoner not only instruments of the crime but also such articles as may be of use as evidence on the trial: *Weeks* v. *United States*, 232 U. S. 383 (58 L. Ed. 652, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 431, see, also, Rose's U. S. Notes); *State* v. *Edwards*, 51 W. Va. 220 (41 S. E. 429, 59 L. R. A. 465); 1 Wharton's Criminal Procedure (10 ed.) § 97 et seq.; 2 R. C. L. 469; 5 C. J. 434; 35 Cyc. 1271. The search is justifiable as an incident to the lawful arrest: 2 R. C. L. 197; 5 C. J. 434."

See also in this connection, 1 Bishop's New Criminal Procedure, Section 211.

The contention, that because the officer making the arrest did not say in so many words before searching the defendant that he was under arrest, is too refined to receive serious consideration. It is an at-

tempt to "split hairs on bald facts." It must be conceded that the search, seizure and arrest were all parts of the same act. An officer takes an unnecessary risk when he starts to search a man without first placing him formally under arrest. The arrest should always be made first and the search and seizure made afterward, but incidental thereto. The search and seizure were not less incidental to the arrest, because the officers did not inform the defendant that he was under arrest until after he was searched, but directly in the same connection and at the same time.

Section 1753, Or. L., defines an arrest thus:

"Arrest is the taking of a person into custody, that he may be held to answer for a crime."

It thus appears that when the officers took the defendant into their custody for the purpose of searching him, he was under arrest notwithstanding the officers did not in so many words inform him that he was under arrest. He knew that the men arresting and searching him were officers. But a few minutes before he was taken into custody, he had delivered to one of them warrants for the arrest of men accused of violating the game laws of the state. The men accused of violating the game laws were brought into court for trial having evidently been arrested and brought there without warrants. If the court is going into collateral matters in the trial of defendant, why not inquire into the manner the men, accused of violating the game laws, were brought into court? To propound the question is to answer it. If collateral matters were to be investigated by the courts in the trial of an action, there would be no end to a trial, and justice would be delayed and hindered, if not defeated.

Section 1757, Or. L., prescribes the manner of making an arrest as follows:

"An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer."

The defendant was actually restrained by the officers when he was taken into their custody and searched. He was arrested before and at the time he was searched, for he knew that he was restrained by deputy sheriffs, officers authorized to make arrests.

Section 1759, Or. L., prescribes:

"The officer must inform the defendant that he acts under the authority of the warrant, and must also show the warrant if required by the defendant."

This has no application to the instant case because the defendant was arrested while committing a crime in the presence of the officers. They had no warrant. His arrest was nevertheless lawful under the provisions of Sections 1763 and 1769, Or. L. It follows, therefore, logically and necessarily, that defendant was lawfully under arrest when he was searched and the "moonshine" taken from him. All of the evidence objected to by defendant, including the "moonshine," was admissible. What the officers might have done, if no intoxicants had been found, is pure speculation and irrelevant in the instant case. That the defendant was not charged with the commission of one or more of the other crimes of which he was apparently guilty is not material to the disposition of the instant case. None of those questions was raised in the Circuit Court: Opinion of Mr. Justice PIPES rendered November 18, 1924, in *Hostetler* v. *Eccles,* 112 Or. 572 (230 Pac. 549).

The manner of making the arrest or search neither contributes to nor detracts from the guilt or innocence of the defendant. The guilt of the defendant is the sole issue joined in the trial of defendant. The defendant was in court charged with the commission of a crime. No other issue should have been tried or determined in that trial.

It necessarily follows from the foregoing that all of the evidence objected to was properly admitted into the record. It also logically follows that the Circuit Court erred in making the order directing the return of the "moonshine." It was lawfully seized as an incident to the arrest, and was competent evidence of the crime charged against the defendant. It was the body of the crime itself, and we might truly say, the "spirits" of it.

If A, while walking along a street, met B, who saluted him, asked some question and then passed on; if A, immediately thereafter, missed his watch and knew that he had his watch just before meeting B; if A then turns to follow B and hails an officer requesting the interception of B for stealing his watch; if the officer seizes B and searches him, finds A's watch, and then says that he arrests B, would B be allowed to prevent the use of the watch as evidence against him, or prevent the introduction of testimony of the circumstances surrounding the theft, because the officer did not say, before searching him, "I place you under arrest for stealing A's watch"? We do not believe a respectable authority can be produced to that effect. Those statements are analogous to the facts in the instant case. The fact, that the defendant violated the law prohibiting the unlawful possession of intoxicating liquor instead of the law against stealing from the person, does not change the principle.

The recent case of *People* v. *Chiagles,* 237 N. Y. 193 (142 N. E. 583, 32 A. L. R. 676, and notes in page 680 and following), is a very illuminating consideration of the principles involved in this case.

The "moonshine" was not offered. The defendant was convicted upon the testimony of witnesses, who saw him, smelled his breath, and observed other indications of his intoxicated condition. These were obvious facts observed by the senses, and by no process of reasoning can it be said that such evidence was secured in violation of Article I, Section 12 of our Constitution. None of these things was testified to by defendant. They were observable and open facts evincing the commission of a crime by defendant, but there was no attempt to compel him to testify against himself. The incidents surrounding the arrest, including the property taken from him, were all lawful evidence and properly admitted: *Silverthorne Lumber Co., Inc.,* v. *United States,* 251 U. S. 385 (64 L. Ed. 319, 40 Sup. Ct. Rep. 182, see, also, Rose's U. S. Notes Supp.); *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505–1510, 171 N. W. 557, and cases cited therein), are not in point. They do not involve the search of a person arrested in the commission of a crime.

Mr. Justice BAKER, in *United States* v. *Snyder,* 278 Fed. 650, where the accused had been arrested without a warrant on sight of bulging pockets as he stood on the street corner and liquor found in his pockets, says:

"The Fourth Amendment to the constitution contains no prohibition against arrest, search or seizure without a warrant. That was left under the rules of common law."

The sense of smell is sufficient to warrant an officer to enter and search the premises without a warrant

115 Or.—15

and seize the utensils employed in such manufacture: *United States* v. *Borkowski,* 268 Fed. 308, 412; *Maples* v. *State,* 203 Ala. 153 (82 South. 183).

As to the admissibility of evidence unlawfully obtained, it seems that this court has ruled that such evidence is admissible. The defendant states, in his well-prepared brief, that this appeal has been brought here to settle that question: *State* v. *Laundy,* 103 Or. 443, 494 (204 Pac. 958, 206 Pac. 290); *State* v. *Ware,* 79 Or. 367, 377 (154 Pac. 905, 188 Pac. 364); *State* v. *Wilkins,* 72 Or. 77, 80 (142 Pac. 589); *State* v. *McDaniel,* 39 Or. 161, 168 (65 Pac. 520). See, also, in this connection, 1 Greenleaf on Evidence (16 ed.), p. 393, § 254a; 4 Wigmore on Evidence (2 ed.), 626, and §§ 2183–2185, and copious notes; note in 13 A. L. R. 1316, and notes in 3 A. L. R. 1514; 22 Michigan Law Review, 722; 9 American Bar Association Journal, 773. The great majority of states have adopted the same rule. Most of the authorities are collated in 4 Wigmore on Evidence, 632, § 2184. Particular attention is directed to *People* v. *Mayen,* 188 Cal. 237 (205 Pac. 435, 24 A. L. R. 1383); *Adams* v. *New York,* 192 U. S. 585 (48 L. Ed. 575, 24 Sup. Ct. Rep. 372, see, also, Rose's U. S. Notes); *Resanski* v. *State,* 106 Ohio St. 442 (140 N. E. 370); *State* v. *Pluth,* 157 Minn. 145 (195 N. W. 789); *Billings* v. *State,* 109 Neb. 596 (191 N. W. 721). Other cases, too numerous to mention, will be found collated and discussed in the cases cited. The most recent case coming to our attention is the case of *State* v. *Godette,* 188 N. C. 497 (125 S. E. 24), decided by the Supreme Court of North Carolina, October 29, 1924.

Article I, Section 12, Oregon Constitution, prescribes:

"No person shall be put in jeopardy twice for the same offense, nor be compelled in any criminal prosecution to testify against himself."

In the instant case the defendant was not compelled to testify at all. He was called as a witness. A different question would arise if the defendant had been required to produce the evidence. That question is not before the court. The evidence was observed by the officers with their senses. The "moonshine" was taken from the defendant while he was actually restrained, was under arrest, and was retained as evidence of the crime he was committing at the very time he was arrested. Such evidence has always and uniformly been admitted. The case of *Youman* v. *Commonwealth,* above, adheres to this rule. That case goes further than any other case toward sustaining the contention of defendant. But it adheres to the rule, not questioned by any authority of which we have knowledge, of the right to retain and use as evidence articles found upon a person when arrested and connected with the charge against the accused. *Youman* v. *Commonwealth,* above, did not arise out of a search of a person under arrest. A great deal of what is said in that case is not relevant to the instant case. What is said about search of the person is purely augmentative.

Nor is it necessary that the defendant's guilt be beyond reasonable doubt before an arrest and search be made. It is sufficient if the accused is apparently committing a crime. It is putting the "cart before the horse" to say that the accused must be guilty beyond reasonable doubt before an arrest and search without a warrant. In the very nature of criminal procedure discretion must be left to an officer. "Arrest may be made when there is reasonable grounds of suspicion that he is the offender." 1 Wharton's

Criminal Law (10 ed.), 179, note 4. "An officer is justified in arresting a man apparently drunk." 2 Wharton's Criminal Law (11 ed.), 1032, note 7; *Commonwealth* v. *Coughlin,* 123 Mass. 436.

What we have written regarding the drunken condition of the defendant is to be understood not as an adjudication of the facts or law in that behalf. That matter is not before the court for adjudication. We have written from the viewpoint of the arresting officers. Peace officers do not adjudicate. They arrest and hold an accused for trial. When they arrest, without warrant, for a crime committed in their presence, they usually become the accusers also. Their function is to bring the accused into court and make a charge against him. They must, in the nature of their duties, act upon probabilities. The accused is entitled to a fair and impartial trial by a court, and is not to be convicted until the accusation is sustained by evidence establishing guilt beyond reasonable doubt. But it is not the duty of the arresting officers to weigh the testimony. They would thus become both accusers and triers. Such a state would be abhorrent to our system of government. If officers, before making an arrest without a writ for a crime committed in their presence, must determine the guilt of the accused in advance, the functions of the courts would be thereby usurped. But that is the logical result of the contention, that because the defendant has not been proven guilty beyond reasonable doubt of having been drunk at the time he was searched, he was, therefore, illegally searched. By such logic a person could never be arrested for committing a crime in the presence of an officer without a warrant. The provisions of our statute, cited above, would be thereby nullified. We do not find that the defendant was drunk at the time

he was searched. We do find that there were sufficient indications of his drunkenness to authorize the officers to make the arrest. They did so at their peril.

We are not to be understood as excusing, much less justifying, the search by officers of any person not apparently committing a crime in the presence of officers, or regularly charged with the commission of a crime and a warrant regularly issued for the arrest. Nothing herein written is intended to authorize a search of the person excepting by officers witnessing the commission of a crime, or in executing a warrant of arrest regularly issued by proper authority.

Professor Wigmore, in said Section 2184, on page 689 of 4 Wigmore on Evidence, aptly states the fallacy of the contrary view, as follows:

"Titus, you have been found guilty of conducting a lottery; Flavius, you have confessedly violated the constitution. Titus ought to suffer imprisonment for crime, and Flavius for contempt. But no! We shall let you both go free. We shall not punish Flavius directly, but shall do so by reversing Titus' conviction. This is one way of teaching people like Flavius to behave, and of teaching people like Titus to behave, and incidentally of securing respect for the Constitution. Our way of upholding the Constitution is not to strike at the man who breaks it, but let off somebody else who broke something else."

The only authority relied upon by defendant involving a search of a person is the case of *State v. Owens,* 302 Mo. 348 (259 S. W. 100), decided February 11, 1924, by the Supreme Court of the State of Missouri, and reported in 32 A. L. R. 383. Paragraph 6 of the syllabus is as follows:

"That intoxicating liquor is contraband because its possession is forbidden by law does not prevent

suppression of it as evidence, when · it is illegally
seized by an officer in searching, without warrant, a
person peaceably passing along a public street.''

The Supreme Court of Utah announced the contrary
rule in a decision rendered November 15, 1923, in
*State* v. *Aime,* 62 Utah, 476 (220 Pac. 704), and also
reported in 32 A. L. R. 375. Paragraph 1 of the
syllabus reads thus:

''Articles taken from an accused are not inad-
missible in evidence against him because taken in
violation of the constitutional provisions against
illegal search and seizure.''

For reasons heretofore given, we think the Utah
case announces the better rule. The Utah decision is
supported by the weight of authority and is more
logical. But even the Missouri case does not sup-
port appellant's contention. That case bases its de-
cision upon an illegal search because the defendant
was not arrested. The contention of the state in
the instant case is that the defendant was lawfully
under arrest at the time he was searched. The de-
fendant does not question the authority of an officer
to search a person lawfully arrested. Any evidence
of· a crime found upon a person lawfully arrested
is admissible in a trial of the defendant charged
with such crime. It is not necessary to the use of
such evidence that the arresting officer should have
accurately designated to the accused the crime for
which he is prosecuted. If the defendant is arrested
by an officer for a crime committed in his presence, the
prosecutor is not thereby bound to charge the defend-
ant for the identical crime named by the arresting
officer. The state has the right to prosecute the de-
fendant for any crime committed by the accused as
revealed by the search. Our statutes are controlling

on the validity of the arrest. Section 1765, Or. L., prescribes:

"*When arresting a person without a warrant,* the officer must inform him of his authority and the cause of the arrest, *except when he is in the actual commission of a crime,* or is pursued immediately after its commission, or an escape."

In addition to the other crimes being committed and attempted to be committed, heretofore mentioned, the defendant was actually committing the crime of unlawful possession of liquor. The officers were authorized, therefore, to arrest the defendant as they did. They had smelled whisky on his breath; had seen his flushed face, disordered coat and staggering walk. These things indicated that he was intoxicated. In the Missouri case there were no such indications. The court in that case comments on the absence of such indications in the following language:

"The sheriff testified that Owens was not doing anything at the time; he did not know whether he was drunk or sober; did not arrest him for drunkenness; did not place him under arrest at the time he searched him. The charge which was made against him was after the sheriff had searched him and found the whisky. The sheriff did not see or *smell any whisky,* he had no knowledge of it. * *

"We are not now considering the right of an officer to search a person lawfully arrested, and take from him to be used in evidence against him and to assist in procuring his conviction, any article which may connect him with the commission of a crime. The right is recognized by authorities generally. * * Likewise it is not a case where a misdemeanor is committed in the presence of the officer who makes the arrest, because it is admitted that the defendant was within the peace of the state so far as conduct was concerned, and it was only by the illegal search that his offense was discovered." *State*

v. *Owens,* 302 Mo. 348 (259 S. W. 100, 101, 32 A. L. R. 383, 384).

In this same case in 302 Mo. 348 (259 S. W. 104, 32 A. L. R. 390), we find the following:

"This question under consideration must not be confused with that arising in cases where a search without warrant under certain conditions is held to be legal and the evidence thereby disclosed admissible for. that reason. A great deal of confusion arises by failure to distinguish between cases *(where the search clearly is illegal* and where the question turns upon the legality of the search. * *

"Where the actions of a defendant justified an officer · in the belief that he was transporting liquor, his search of the defendant's automobile was not unreasonable, although without a warrant. *Lambert* v. *United States* (C. C. A. 9), 282 Fed. 413."

Other illustrations are given from adjudicated cases in the opinion in *State* v. *Owens,* above, from which the foregoing excerpts are taken. That case was the principal support of defendant's argument at the rehearing. The vice of defendant's argument is in assuming the arrest of defendant to be unlawful because made solely as a result of the illegal search. The defendant's conduct, at the time he was arrested and searched, indicated that he unlawfully possessed intoxicating liquor. The possession of intoxicating liquors is a crime in this state. The information inducing the search was acquired by the arresting officers independently of the search. But for the odor from defendant's breath, his uncomely appearance and staggering walk, no search would have been made. The officers were not required to ignore the evidence of the intoxicated condition of defendant. It was their duty to arrest and search him under the circumstances. They are not required to hold their nose, shut their eyes and stop up their ears

in order to avoid observing the evidence of crimes committed in their presence. No authority has been cited by appellant supporting his contention in the instant case. The following excerpt taken from the case of *State* v. *Andrews,* 91 W. Va. 720, 728 (114 S. E. 257, 260), is quoted in *State* v. *Owens,* above, and reads thus:

*"That if the knowledge of such evidence is gained from an independent source,* it may be proved like any other facts, but that knowledge thereof gained by the state's own wrong cannot be used in the way proposed in this case."

The search of defendant was legal. The most that can be said in favor of the defendant is that it was not made legally. In other words, defendant may have reason to say that the officers should have announced his arrest before making the search. But the defendant knew that the men arresting and searching him were deputy sheriffs of the county in which he was searched. There was no need for them to inform him. Defendant also knew that he had been drinking and unlawfully possessed liquor. Nothing would have been revealed to him by such an announcement. Under Section 1785, Or. L., the announcement was not necessary because the crime was committed in the presence of the officers making the arrest.

The foregoing reasons compel an affirmance of the judgment. The defendant was apparently drunk at a public gathering, in a public place, and was attempting to commit another crime when actually restrained by the officers. While actually restrained, he was searched. The evidence admitted over the objection of defendant was observed by the officers. That evidence consisted of a series of facts observable by the senses. The "moonshine" itself was

taken from the defendant while he was so actually restrained by the officers for committing crimes in their presence. Not only was the testimony of finding the "moonshine" and its alcoholic content admissible, but the "moonshine" itself was admissible under all of the authorities touching the subject and cited by defendant. After the "moonshine" was seized by the officers, the defendant in effect admitted his guilt and said to the officers, file your complaint and he would plead guilty. There is no pretense that he is not guilty. The manner of making the arrest is foreign to the issues involved in the trial. The officers are not on trial for making an arrest wrongfully, nor for false imprisonment. The only and sole issue is the guilt or innocence of the defendant. The conduct of the deputy sheriffs making the arrest, and of the justice of peace in refusing to dismiss the complaint and return the evidence of defendant's guilt procured as it was, should not only not be condemned, but approved *cum laude.*

The judgment should be affirmed.        AFFIRMED.

McBRIDE, C. J., and BURNETT, J., concur in the result in this opinion.

---

Affirmed on rehearing June 30, 1925.

ON REHEARING.

(237 Pac. 373.)

For appellant there was a brief and oral argument by *Mr. A. D. Leedy.*

For respondent there was a brief over the name of *Mr. Fred McHenry,* District Attorney, and *Mr.*

*G. W. Denman,* with an oral argument by *Mr. Arthur Clarke.*

BELT, J.—Defendant was convicted of the crime of having intoxicating liquor in his possession. Timely application was made to the court for return of the whisky taken from him—which in our opinion was equivalent to a motion for suppression of evidence—upon the ground that he was not under lawful arrest and that the search made was in violation of his constitutional rights. The trial court held that the search and seizure were unlawful, but permitted the state, over the objection and exception of appellant, to introduce evidence to the effect that the flask taken from him contained intoxicating liquor. Did the court thus commit reversible error? It is conceded, for which no authorities need be cited, that if the search and seizure were legal, the evidence thereby obtained would be admissible. If the search and seizure were illegal, the admissibility of the evidence depends upon whether this court elects to follow the rule as announced by the federal courts: *Weeks* v. *United States,* 232 U. S. 383 (58 L. Ed. 652, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341); *Gouled* v. *United States,* 255 U. S. 298 (65 L. Ed. 647, 41 Sup. Ct. Rep. 261); *Amos* v. *United States,* 255 U. S. 314 (65 L. Ed. 654, 41 Sup. Ct. Rep. 266, see, also, Rose's U. S. Notes and Supp.); 5 C. J. 395.

22. Let us consider first the legality of the search, for if it be determined that the same was legal, then the problem before us is solved. At the time defendant was searched the officers did not have a warrant of search or arrest. Justification for the search therefore must be predicated on the right to arrest defendant for a crime committed, or attempted to be committed, in their presence. If the arrest was un-

lawful, the search was unlawful: 2 R. C. L. 467. The validity of the search does not, however, depend upon the existence of a warrant: *Carroll* v. *United States* (U. S.), 45 Sup. Ct. Rep. 280), decided by the United States Supreme Court March 2, 1925; *State* v. *Turner,* 302 Mo. 660 (259 S. W. 427). The federal and state Constitutions guarantee protection only against unreasonable search: *Amos* v. *United States, supra; Gouled* v. *United States, supra; People* v. *Case,* 220 Mich. 379 (190 N. W. 289, 27 A. L. R. 691); *State* v. *Turner, supra.* A lawful search is reasonable, and an unlawful search is unreasonable. It follows, therefore, that he who would search the person of another must do so pursuant to law; otherwise, there is an invasion of his personal liberty and a violation of his constitutional rights. The officers not having a warrant would be justified in arresting defendant only for a crime committed, or attempted to be committed, in their presence. If the arrest was lawful, then the right to search and seize the fruits or instrumentalities of the crime exists without question: *State* v. *Laundy,* 103 Or. 443 (204 Pac. 958, 206 Pac. 290).

Was a crime, in contemplation of law, committed in the presence of the arresting officers? The facts of this case are lucidly stated by Mr. Justice PIPES, speaking for a majority of the court, on the original hearing, as reported in 231 Pac. 965, and it is not deemed necessary to restate them at length here. Suffice it to say, Robinson testified:

"I observed he was under the influence of liquor. Q. How did you observe that? A. By the scent and by the way he acted. Q. The scent of what? A. of booze on his breath. * * Well, his face was all flushed up—also, he came up with his overcoat all buttoned up here—his overcoat, it was buttoned this

way. * * Q. What did you observe about his conduct in going to the car? A. He walked to me like a man that is under the influence of liquor.''

Plunkett testified:

''I observed that he was considerably under the influence of liquor. Q. By what means did you arrive at that conclusion? A. By his actions and by his breath. Q. What about his breath? A. It was pretty strong with liquor odor. Q. What about his face? A. His face showed signs—it was pretty red.''

23, 24. From such observations did the officers have the right to draw the reasonable inference that the defendant was drunk? There are different degrees of drunkenness, but in a legal sense a person is drunk when he is so far under the influence of intoxicating liquor that he is not entirely himself, and his unusual appearance—flushed face and staggering walk—attracts the attention of others: *Elkin* v. *Buschner,* 1 Monaghan (Pa.), 359 (16 Atl. 102); Bouvier's Law Dict. (3 ed.), p. 943. Reasonable cause to believe a person to be intoxicated is sufficient to excuse an arrest without a warrant if such conclusion is based on personal observation: *Commonwealth* v. *Presby,* 14 Gray (Mass.), 65; *United States* v. *Rembert,* 284 Fed. 996.

''An offense is considered as taking place within the view of a police officer where his senses afford him knowledge that one is being committed.'' 2 R. C. L. 448.

In 5 C. J. 416 it is said:

''An offense is committed in the presence or view of an officer, within the meaning of the rule authorizing an arrest without a warrant, when the officer sees the acts constituting it, although at a distance,

view of such acts as constitute reasonable grounds for arrest being sufficient."

Blakemore on Prohibition (2 ed.), page 487, says:

"Under the federal as well as the state statutes, to justify search and seizure or arrest without warrant the officer must have direct personal knowledge, through his hearing, sight, or other sense, of the commission of the crime by the accused. But it is not necessary that he should actually see the contraband liquor."

Sense of smell is often more unerring than that of sight. Lipton's tea might look ever so much like Scotch whisky and fool many people dependent solely upon sight, but few would be misled through the sense of smell. In *McBride* v. *United States,* 284 Fed. 416, federal officers passing along the street smelled the fumes of whisky, and without warrant seized the still located in a building. The court held the crime was committed in their presence and refused to suppress the evidence. In *State* v. *McAfee,* 107 N. C. 812 (12 S. E. 435, 10 L. R. A. 607), it was held that where an assault was so near the officer could hear the conversation and the sound made by the blow, it was a breach of the peace in the presence of the officer, although he could not see the parties on account of darkness. The rule is well stated in *Ingle* v. *Commonwealth,* 204 Ky. 518 (264 S. W. 1088):

"When the evidence of such commission reaches him through his senses and is sufficient to render the ultimate fact morally certain and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the offense is then and there being committed, he may act upon such information as being tantamount to actual knowledge that the offense is being committed, and

if it turns out that he was correctly convinced the arrest will be upheld as one having been made for an offense committed in the officer's presence."

*People* v. *Esposito,* 118 Misc. Rep. 867 (194 N. Y. Supp. 326), is much in point:

"Was the arrest lawful? The defendant was all the while committing the crime of having the revolver in his personal possession without a license. Was the crime committed in the presence of the officer? The defendant was on the street a few paces from the officer; all that intervened between the officer and the physical object, the body of the offense, was a brief space and a bit of cloth. To this mere propinquity were joined visible indications in some degree significant. Defendant's glancing at the officer and retreat as described, when the latter appeared to be about to accost him, might reasonably have been considered flight, with its implication of guilt. Personal presence includes corporeal extension within the sphere of sense perception. Presence is not the same as view. To justify arrest without a warrant by an officer for a misdemeanor, the statute requires that the offense be actually committed or attempted in the officer's presence. There is no definite statement of the necessary extent of the evidence conveyed to the officer's consciousness. The purpose of the permission is promptness, to secure apprehension and identification. In the emergency the officer proceeds or tarries at his peril. If he does not act, he may incur penalty of dereliction. If in arresting he makes mistake of law or fact as to the commission of the offense, no matter how clearly apparent to him may seem the doing of the forbidden act by the person arrested, the officer is a trespasser and liable accordingly. *Stearns* v. *Titus,* 193 N. Y. 272 (85 N. E. 1077).

"The officer has no judicial immunity for errors of judgment. He must be right or suffer. Therefore, if he is right by ultimate determination, he ought not to suffer, provided only he has acted in good faith.

Hence the rule deducible according to the law in this state may be stated thus: If a police officer is in bodily reach of a person then and there actually engaged in the commission of a misdemeanor, and perceiving indications of the commission of the offense sufficient to induce reasonable belief of the fact, acting in good faith, intending performance. of duty, proceeds to arrest such person, the arrest is lawful as for the commission of a crime in the officer's presence."

25. In support hereof see the well-reasoned case of *United States* v. *Rembert, supra.* Viewed in the light of the authorities above cited, we believe that the officers in question, from personal knowledge acquired through their senses, had the right to draw the reasonable inference that the defendant had intoxicating liquor in his possession and that he was attempting to drive an automobile while in a drunken condition. Without doubt he was committing a crime in their presence, for which they had the legal right to make an arrest.

Section 1753, Or. L., defines an arrest as follows:

"Arrest is the taking of a person into custody that he *may* be held to answer for *a* crime."

Section 1757, Or. L., provides the manner in which it is made:

"An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer."

26. When the defendant got into his automobile and started the engine, and the officers stepped on the running-board saying, "Hold on there, Mac, we are going to search the car and you," the arrest as tested by the above statutory provisions was then and there consummated. The defendant certainly was under restraint and undoubtedly submitted to

the custody of the officers. He knew them and knew what they intended to do. He also knew that he was guilty of committing a crime in their presence and that he was subject to arrest. He was taken into custody that he might be held to answer for the commission of *a* crime, and the search that followed was incidental thereto. It is true that he was not held for the crime of being drunk in a public place or driving an automobile while in an intoxicated condition, but the crime for which he was held does not determine the validity of the arrest in the first instance. It is altogether possible that a person might be arrested for one crime and held to answer for another. We know not for what crime the officers contemplated holding the defendant to answer when they took him into custody. It may be the officers decided to hold him to answer for the crime of having intoxicating liquor in his possession when it was actually found on his person but, if such be true, that would not invalidate a prior arrest. If in making a legal search evidence of another crime is discovered, an officer certainly would not be precluded from making an arrest for such offense, even though the accused had been previously arrested for a different crime.

27. It is urged that the arrest followed, and did not precede, the search. In our opinion it is immaterial whether the arrest preceded or followed the search if such acts were practically simultaneous, and if, in fact, the defendant was guilty of committing a crime in the presence of the officers for which he might have been arrested. In many instances it is dangerous for an officer to go through the formality of stating that the accused is under arrest, and the law does not require him to do so. It is oftentimes safer to act first and talk afterward. In *Ingle*

115 Or.—16

v. *Commonwealth, supra,* the court, answering a similar contention that "the sheriff did not arrest the defendant at that time, but first made the search," said:

"We seriously doubt if it is based upon sound reasoning, since we are inclined to the belief that a search may always be made without a warrant in all cases where an arrest might be made without a warrant for an offense committed in the officer's presence."

The same question was presented in *State* v. *Reynolds,* 101 Conn. 224, 125 Atl. 636, and the court said:

"We think he was justified in securing the bottle of whisky before he placed the accused under arrest. In reality both acts were practically simultaneous, and if the general rule had required the arrest before the search, we should think it far too technical an application of the rule to hold that this search was unlawful because it preceded the arrest by an appreciable moment of time."

28, 29. We are not unmindful of the duty of courts to safeguard the constitutional rights of the guilty as well as the innocent, and the mere fact in itself that whisky was found in the possession of the defendant would not legalize a search which was unlawful when undertaken. The legality of the search and seizure must be tested by determining whether the officers were justified in making an arrest without a warrant for a crime committed in their presence. If they were so justified, the right of search and seizure follows as an incident of the arrest. If the arrest was unlawful, then it is equally certain that the search was unreasonable, and therefore unlawful. We give no sanction or approval to arrests based upon mere suspicion and hearsay, and

exploratory searches cannot be made to obtain evidence upon which to base an arrest. The law requires the arresting officers to exercise prudence and good faith, and will not countenance impudent and unwarranted interference with the constitutional rights of citizens to be "secure in their persons, houses, papers, and effects." In the instant case the defendant was legally arrested and searched, and the evidence of his crime was admissible to establish his guilt. The trial court erred in holding the search and seizure unlawful, but since the ruling favored the defendant he is in no position to complain. The evidence that was admitted was sufficient to establish the charge in the indictment.

Having held there was a lawful search and seizure, it follows that the evidence thus obtained was admissible, and it is neither necessary nor essential to a decision of this case to pass on the question as to whether evidence illegally obtained is admissible where timely application has been made to suppress the same. Properly that question is considered only where the search and seizure are unlawful. It is not so here. We ought to be and are content to decide only those matters before us for decision.

The defendant was duly convicted of a crime of which he was unquestionably guilty. His rights under the Constitution have not been violated, and we see no reason to reverse this case.

The judgment of conviction is affirmed.

                                        AFFIRMED.

McBRIDE, C. J., and BURNETT and COSHOW, JJ., concur; BEAN, RAND and BROWN, JJ., dissent.

BROWN, J., Dissenting in Part, Concurring in Part.—In the main I am in accord with the law as laid down by Mr. Justice Belt in the well-prepared majority opinion, but I cannot concur in the holding that the defendant was lawfully arrested prior to the forcible search of his person, or that such search and subsequent arrest were contemporaneous.