## STATE *v.* SMITHSON

### No. 2999

March 6, 1933.                    19 P.(2d) 631.

*Chandler, Quayle & Gill*, for Appellant:

*Gray Mashburn,* Attorney-General; *W. T. Mathews,* Deputy Attorney-General; *V. H. Vargas,* District Attorney; and *Geo. P. Annand,* Deputy District Attorney, for the State:

## OPINION

By the Court, COLEMAN, J.:

The defendant was convicted of the crime of murder. He has appealed from the judgment and the order denying him a new trial.

The facts, briefly stated, are these: The defendant, who was the owner of the Palace Club, about 4:30 in the morning of January 10, 1932, with others, was engaged in target practice with a pistol, within the club. H. D. Long, known by defendant to be a peace officer, learning of the incident, went into the place and inquired of the defendant what was going on. He demanded the pistol used, admonished defendant, and started out. On the way to the door he ejected the blank cartridges from the gun. As he was opening the door to go out, the defendant inquired of him when he would get the gun back. To the inquiry of the defendant, Long made reply, turned around, and approached the south end of the bar, defendant being near the other end of it. Long, with a pistol in his hand, advanced behind the bar, toward the defendant, who reached up, grabbed a rifle, and shot Long through the heart, causing instant death. The testimony is conflicting as to what was said by defendant and Long as the latter advanced toward defendant.

It is the theory of the state that Long intended to arrest the defendant. The defendant contends that he shot in self - defense — that Long threatened to break the gun (which it is admitted he held in his hand) over defendant's head. The defendant also contends that Long had no legal authority to arrest him; there being no warrant therefor.

We will not consider the points made in the order presented, believing that by taking them up in the following order we may be able to epitomize to some extent.

■■ It is strongly insisted that the trial court erred in refusing to give the following requested instruction:

"Under the law of this state a peace officer is authorized to make an arrest on a misdemeanor charge only when the misdemeanor is committed in his presence. The discharging of firearms, as testified in this case, amounts only to a misdemeanor under the law. There is no evidence in this case before you that defendant Smithson engaged in target practice or discharged firearms in the presence of peace officer Long, Long, therefore, had no authority to arrest Smithson for discharging firearms within the city limits of Ely without a warrant and there is no evidence in this case that at the time he entered the Palace building he had such a warrant.

"I therefore charge you that in case you find that officer Long, at any time while he was in the Palace building, attempted to arrest defendant Smithson such action in so attempting to arrest Smithson was unlawful and Smithson had the right to resist such unlawful attempt, if you find such attempt was made by Long, to the extent of using such force as was necessary so to do."

One vice of this requested instruction is that it tells the jury that there is no evidence that defendant engaged in the target practice in the presence of officer Long.

It was for the jury to determine from the evidence whether there was such shooting in the presence of the officer.

The uncontradicted testimony of witness Olsen is that he heard the shooting, three shots, and that he was on the street a little over a half a block from the Palace Club at the time; that Long was on the opposite side of the street from him at the time of the first shot.

Mr. Lewis, one of the witnesses for the defense, testified, inter alia, that Long went into the Palace Club on the occasion in question, quoting:

"A. He come in and he says, 'What's all of this racket about?' He told Mr. Smithson that he didn't want to hear any more racket like that and took a gun away from Mr. Smithson.

"Q. Or he would take the gun away from him? A. No, he did take the gun away from him.

"Q. Did he take it out of Smithson's hand—defendant's hand, or did he ask Smithson to give it to him? A. He said 'give him the gun.'

"Q. Did Smithson give him the gun? A. Yes, sir."

With a slight variation of the phraseology, all witnesses testified to substantially the same thing.

From this testimony the jury had a "right to infer," to use the language of the supreme court of Missouri in State v. Grant, 76 Mo. 236, that Long not only heard the first of the three shots Olsen testified to hearing, but that he heard the two other shots while walking the half block from where he stood when he heard the first one to the Palace Club. The testimony shows that when he walked into the Palace defendant was out on the floor with the gun in his hand.

From this testimony the jury had the right to find that Long walked into the Palace Club while the defendant was flagrante delicto.

We have found many cases in which the courts have held that a crime was committed in the presence of the officer where the facts were nothing like as satisfactory as in the instant case. In Dilger v. Com., 88 Ky. 550, 11 S. W. 651, where the evidence showed that two policemen who heard the cries of a woman in an upstairs room, but saw nothing, undertook to arrest her paramour, who, in resisting, killed the two policemen, the court said:

"Unquestionably they had a right to make the arrest. While the offense of beating the woman was not committed in their sight, yet it was within their hearing, and when they were so near that they could not be mistaken as to the offender. This was within their presence, as contemplated by the law. Moreover, the instructions given to the jury told them that the offense for which the arrest was attempted must have been committed in the presence of the officers."

In Ingle v. Com., 204 Ky. 518, 264 S. W. 1088, 1090, the court said: "We have held in a number of cases, and it appears to be the law everywhere, that an offense, in order to be committed in the presence of the officer, need not occur immediately within his vision, but that if he receives the information of the commission of the offense through any of his senses, the most frequent of which is that of hearing uncommon and suspicious noises which he can readily locate, he is authorized to follow it up, and if it turns out that the offense was actually committed, it will be considered as having been committed in his presence for the purpose of authorizing him to arrest the offender without a warrant although the crime was only a misdemeanor. * * * "

In State v. McAfee, 107 N. C. 812, 12 S. E. 435, 437, 10 L. R. A. 607, the court held that, where the officer heard the striking with a stick of a wife by her husband, though he did not see the act because of darkness, the offense was in his presence, saying: "The principal evil intended to be avoided by restricting the right to arrest to breaches of the peace committed in the officer's presence was depriving a person of his liberty except upon warrant issued on sworn information, or upon the actual personal knowledge of the officer that the offense was committed. The reason of the law is as fully met, therefore, if the officer heard enough to satisfy him that the law was violated, as if he had acquired the information through his sense of sight."

In Ramsey v. State, 92 Ga. 53, 17 S. E. 613, 615, the supreme court of Georgia quoted approvingly as

follows: "It is a general principle that an offense is considered to be committed 'in the view' or 'in the presence' of an officer where any of his senses afford him knowledge that an offense is being committed. Therefore, an officer on the street, who hears the noise of an assault or an affray in a house, is justified in entering and making an arrest for a breach of the peace, although all is quiet when he enters the room whence the sounds proceeded. In such a case the breach of peace occurs 'in the presence' of the officer, within the meaning of the law."

The supreme court of Wisconsin, in Hawkins v. Lutton, 95 Wis. 492, 70 N. W. 483, 485, 60 Am. St. Rep. 131, in commenting upon a case in which an arrest was made as the result of the noise heard, said: "The evidence tends to show that the alleged violation of the ordinance may fairly be said to have been committed in the presence of the defendants. They had heard the disturbance and disorderly conduct from the outside of the house, and the evidence tends to show that they had been summoned there, or their attention had been attracted to it. The chief of police arrived in time to become aware of the conduct in progress within, and, acting in apparent good faith, and on what appeared to be reasonable ground, ordered the house to be 'pulled.' The policemen at once entered the house, and found the plaintiff an inmate and abiding therein. The evidence tends to show that she was its proprietor. The authority of conservators of the public peace to make arrests in such cases should be liberally construed and upheld, but always at the risk that they will be liable if it be misused or abused. People v. Bartz, 53 Mich. 493, 19 N. W. 161; Ballard v. State, 43 Ohio St. 340, 1 N. E. 76; O'Connor v. Bucklin, 59 N. H. 589; State v. Russell, Houst. Cr. Cas. [Del.] 122."

The rule is laid down in Corpus Juris as follows: "An offense is likewise deemed committed in the presence of the officer when he hears the disturbance created and he proceeds at once to the scene, and where

the offense is continuing, or has been fully consummated at the time the arrest is made." 5 C. J. 416, sec. 45.

Ruling Case Law states the rule in substantially the same words. It says: "Accordingly an assault is considered as being committed in the presence of the officer if he is near enough to hear the outcries and arrives immediately after the disturbance has been completed, or if while outside a house he hears disorderly conduct in progress within." 2 R. C. L. p. 448.

To the same effect are: United States v. Borkowski (D. C.), 268 F. 408; Lambert v. United States (C. C. A.) 282 F. 413; McBride v. U. S. (C. C. A.) 284 F. 416; Id., 261 U. S. 614, 43 S. Ct. 359, 67 L. Ed. 827; Garske v. U. S. (C. C. A.) 1 F. (2d) 620; State v. Gulczynski, 2 W. W. Harr. (Del.), 120, 120 A. 88; Campbell v. Com., 203 Ky. 151, 261 S. W. 1107; State v. McDaniel, 115 Or. 187, 231 P. 965, 237 P. 373.

Many other authorities might be cited to the same point.

The court did not err in refusing to give requested instruction No. 10.

██ It is insisted the court erred in refusing to give defendant's requested instruction No. 5, which reads: "You gentlemen of the jury are instructed that the discharge of a pistol upon any public street or in any theatre, hall, store, hotel, saloon or other place of public resort is, under our law, only misdemeanor. You are also advised that the duty of any peace officer is limited to making an arrest of one guilty of misdemeanor. A peace officer, without making such arrest, has no right to take or seize any personal property of the one accused of the misdemeanor; and if, without making the arrest and after taking over into his possession the pistol previously possessed by the party discharging firearms and the peace officer thereafter starts or enters into a quarrel respecting what is to be done with such pistol, he acts beyond the scope of his duty and power of a peace officer and in the prosecution of such quarrel is no longer protected or shielded by his official character."

In connection with the refusal of this instruction, it is contended that, if Long at the time he was shot was attempting to arrest the defendant, he was acting in excess of his official authority, and hence the defendant had the same legal right to resist arrest as he would have had had a private citizen sought to arrest him for the same offense, and that he was justified in resorting to whatever means necessary to maintain his liberty; that, if he were seeking to make an assault, the defendant had a right to resist to whatever extent necessary to defend himself; and that in no event should he have been convicted of a higher offense than manslaughter.

It is the contention of the state that, if the above instruction be correct, no prejudice was done the defendant, since the matter covered by it was substantially covered by the court's instruction No. 14, which reads:

"While it is the duty of a peace officer to maintain the peace and suppress disturbances of the peace which come to his attention, yet his powers in so doing are limited to the making of an arrest. In effecting such arrest he may use such force and only such force as may be necessary to overcome resistance which the party being arrested may offer.

"Such peace officer, however, has no right to use the cloak of his authority to enter into a quarrel with the disturber of the peace and if he does so, and in the course of such quarrel attacks or threatens to assault the other party, his official position will not shield him. He stands, in such case, in no better position than one not an officer who may make an assault or enter into such quarrel, and in such case the other party has a right to defend himself against the attack or threatened attack of such officer to the same extent and in the same way in which he would have the right of self-defense were the attack or assault by anyone not a peace officer.

"If, then, you find that Long had suppressed the disturbance of the peace and, after having so restored peace and quiet, returned to assault or make a threatened assault on defendant Smithson, Smithson had the

right to defend and protect himself against such assault in the same way and to the same degree as though Long were not an officer. * * * "

We think the contention of the state in this connection is well founded. By instruction No. 14 the court clearly told the jury that the officer had no right, under the cloak of his authority, to enter into a quarrel with the defendant, and that, if he did so, his official position would not protect him, and that the defendant had a right to defend himself in such a situation.

Nor are we in accord with the contention that the defendant should not have been convicted of a higher offense than manslaughter. Human life, as well as human liberty, is sacred. It should not be lightly taken, nor in any event except under the most dire circumstances and as a matter of last resort to save one's own life or to prevent receiving great bodily injury. Where an unlawful arrest is attempted, the person sought to be unlawfully arrested may resist to a reasonable degree, but, where the arrest is sought to be made by a known officer, and nothing is reasonably to be feared beyond the abridgment of one's liberty temporarily, resistance to the extent of taking life is inexcusable. Of course, before one can be convicted of murder in resisting an unlawful arrest, the jury must, upon an appropriate instruction, find that all the elements of the crime of murder, as defined by statute, entered into the killing.

We approve the language used in Adams v. State, 175 Ala. 8, 57 So. 591, 592, reading: "The citizen may resist an attempt to arrest him which is simply illegal, to a limited extent, not involving any serious injury to the officer. He is not authorized to slay the officer, except in self-defense; that is, when the force used against him is felonious, as distinguished from forcible. It is better to submit to an unlawful arrest, though made with force, but not with such force as to endanger the life or limb, than to slay the officer."

The conclusions we have reached are admirably expressed by the supreme court of Utah, in State v.

Anselmo, 46 Utah, 137, 148 P. 1071, 1076, wherein it is said: "Although an officer or other person may make, or attempt to make, an arrest without legal authority so to do, yet the person arrested may not, for that reason alone, kill the person or officer making or attempting to make an illegal arrest. Such a homicide may still be murder in the first degree, if the facts and circumstances under which it occurred bring it within the statutory definition of first degree murder. It certainly is not the law—and we trust never will be in this jurisdiction— that a citizen may kill an officer with impunity merely because such officer may make an attempt to arrest the citizen without legal authority so to do. True, the right of the citizen to enjoy liberty at all times is sacred, and may not be interfered with without legal right or authority by any one. Yet, upon the other hand, the citizen may not ruthlessly take the life of any one who may interfere or attempt to interfere with that liberty. Where an unlawful arrest is attempted by an officer or another, the person sought to be thus unlawfully arrested may no doubt resist such an arrest with all proper and reasonable means. He may, however, not kill the offending officer or person, unless it reasonably appears to such citizen that his life or limb is in danger."

See, also, People v. Dallen, 21 Cal. App. 770, 132 P. 1064; State v. Holcomb, 86 Mo. 371; State v. Meyers, 57 Or. 50, 110 P. 407, 33 L. R. A. (N. S.) 143; Territory v. Lynch, 18 N. M. 15, 133 P. 405; State v. Clark, 64 W. Va. 625, 63 S. E. 402; Sanders v. State, 181 Ala. 35, 61 So. 336; Imperio v. State, 153 Wis. 455, 141 N. W. 241; Com. v. Phelps, 209 Mass. 396, 95 N. E. 868, Ann. Cas. 1912B, 566; Keady v. People, 32 Colo. 57, 74 P. 892, 66 L. R. A. 353; 3 Cal. Juris, p. 136; 13 R. C. L. p. 868, sec. 170; 29 C. J. 1095.

■■ The court erred, as contended, in instructing the jury relative to a person discharging a pistol, or other firearm, while under the influence of liquor, since there was no evidence that the defendant was under the influence of liquor; however, the defendant was in no way prejudiced thereby. A court should scrupulously avoid

instructing as to a state of facts concerning which there is no evidence.

■ Counsel for defendant complains of the fact that upon the trial the state called only two witnesses to testify as to the facts of the case, whereas the names of several other persons who were present at the time of the killing were indorsed upon the information. We held in State v. Milosovich, 42 Nev. 263, 175 P. 139, that such practice did not constitute reversible error.

While other errors are suggested by counsel for defendant, they are not seriously insisted upon, and we do not find that they are of any merit.

The judgment and order appealed from are affirmed.

ON PETITION FOR REHEARING

May 24, 1933.

**OPINION**

By the Court, COLEMAN, J.:

■ The petition for a rehearing states that we were evidently slightly confused as to the instruction first quoted in the opinion, and instruction No. 10 as given by the court.

We were not in the least confused as to the correctness of either. After quoting the instruction mentioned, we pointed out why it was not applicable. We referred to several authorities sustaining the view that an officer does not have to see a violation of the law to justify a jury in finding that it was committed in his presence. The authorities cited in support of the conclusion we reached amply justify that conclusion, and many more might be cited to the point.

It is contended that we erred in saying that one vice of the instruction refused, above mentioned, is that it tells the jury that there is no evidence that defendant engaged in the target practice in the presence of Officer Long. In support of the contention counsel rely on the case of State v. Anselmo, 46 Utah 127, 148 Pac. 1071. All that is held in the case mentioned, on this point, is that if the question of arrest of the offender in the presence of the officer is not in dispute, nothing on this point is to be left to the jury, but that the contrary is true where the facts are in dispute.

We did make a misstatement in saying the court did not err in refusing to give requested instruction No. 10. What we should have said was that the court did not err in giving instruction No. 10. Instruction No. 10 states the converse of the requested instruction quoted, which we held properly refused. Naturally, if that was properly refused, No. 10 was properly given.

It is insisted that we misstated Olsen's testimony as to where Long was when Olsen heard the first of the three shots of which he gave testimony. In this counsel is correct. Olsen testified that at the time mentioned he was in the vicinity of the Capital Building and that Long was in front of the Northern Hotel. The writer, having personal knowledge of the relative position of the two buildings, fell into the error mentioned. Since there was no showing as to how far the Northern Hotel is from the Palace Club, the question is whether the jury, under the evidence, was justified in finding that Long heard the shooting. While Long was in front of the

Northern Hotel the first shot heard by Olsen was fired; where he was when the other two shots were fired does not appear. As we pointed out in our former opinion, defendant's witness Lewis, in referring to Long going into the Palace and as to what was said, testified: "He came in and he says: 'What's all this racket about?' He told Mr. Smithson that he didn't want to hear any more racket like that and took a gun away from Mr. Smithson."

Defendant's witness Baldwin, evidently an employee of defendant, referring to Long's appearance upon the scene, testified: "He came in the front door and walked over to Bart (defendant) and he said, I think, 'You are disturbing the peace or creating a disturbance  *  *  * You better give me that gun.'"

Defendant's witness Lyon testified on this point that Long, when he came into the Palace, said to defendant: "What the hell you trying to pull off around here. Bart said; Nothing. We just having a little target practice."

The witness Sumner testified: "Well, the next shot was fired, that I can recall, was when Officer Long dropped in—after he stopped shooting at the dollar."

The witness McGuire testified: "I think he shot at it twelve times. He never hit the dollar but he hit the box once and knocked the box over and the dollar fell out. And then Mr. Long came in and said to Mr. Smithson, he said, "Jesus Christ, Bart, you can't shoot like that in here."

In view of this testimony we think the jury had the right to infer that Long heard the shooting in question, and in addition to that he found defendant in possession of the gun, supplemented by the statement of the defendant that "we are just having a little target practice." From this showing we think the jury had the right to find that Long walked into the Palace Club while the defendant was flagrante delicto.

Counsel quotes the following from our former opinion: "Of course, before one can be convicted of murder in resisting an unlawful arrest the jury must, upon an

appropriate instruction, find that all the elements of the crime of murder, as defined by statute, entered into the killing.'"

The court defined murder in its instruction No. 3, and in instruction No. 4 distinguished between murder of the first and second degree. If the defendant wanted further instructions on that phase of the case he should have requested them. State v. Charley Hing, 16 Nev. 307; State v. McLane, 15 Nev. 345; State v. Switzer, 38 Nev. 108, 145 Pac. 925.

We cannot see that the defendant was in any way prejudiced during the trial.

The petition is denied.