No. 13462

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

------------

DONALD R. McGEE,

                    Plaintiff and Respondent,

        -vs-

BURLINGTON NORTHERN INC.,
a corporation,

                    Defendant and Appellant.

------------

Appeal from:   District Court of the Eighth Judicial
                 District,
               Honorable Nat Allen, Judge presiding.

Counsel of Record:

        For Appellant:

            Gough, Shanahan, Johnson and Waterman, Helena,
             Montana
            Cordell Johnson argued, Helena, Montana

        For Respondent:

            Hoyt and Bottomly, Great Falls, Montana
            John C. Hoyt argued, Great Falls, Montana

------------

                        Submitted:   October 7, 1977

                        Decided:   NOV 1 5 1977

Filed:   NOV 1 5 1977


_____
          Thomas J. Kearney
                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court:

This is the second appeal to this Court of an action for damages initiated by Donald R. McGee against Burlington Northern, Inc., as a result of injuries sustained in an accident occurring on November 4, 1971. The first jury trial resulted in a verdict for plaintiff McGee in the amount of $525,000. That verdict was appealed by defendant and this Court held defendant was negligent as a matter of law, but remanded the case for retrial on the issues of damages and contributory negligence. McGee v. Burlington Northern, Inc., 167 Mont. 485, 540 P.2d 298 (1975). Plaintiff's petition for rehearing was denied by this Court on September 12, 1975. Plaintiff's subsequent petition to the United States Supreme Court for a writ of certiorari was denied. McGee v. Burlington Northern, Inc., 423 U.S. 1074, 96 S.Ct. 857, 47 L ed 2d 83(1976).

Retrial of the cause before a jury began April 27, 1976 in the District Court, Cascade County. Following trial, the jury returned a verdict for plaintiff in the amount of $618,000. Judgment was entered. Defendant's motion for a new trial was denied. Defendant appeals from the judgment.

The facts developed at retrial are:

On the evening of November 4, 1971, plaintiff was a member of the train crew engaged in yard switching at the station of Omak, Washington. Plaintiff was the "swingman" in charge of carrying out the orders contained in the switching list. The remainder of the crew was composed of a conductor, an engineer, a flagman responsible for stopping and making fast those cars which were switched onto a different tract, and a head brakeman, who operated the switching mechanisms.

Just prior to the accident, the switch engine was on the main line, facing east. A boxcar was coupled in front of the engine, and a chip car coupled directly to the front of the boxcar. Plaintiff determined that to successfully accomplish the switch, it would be necessary to "kick" the chip car upgrade, along the main line. The switch would then be thrown, such that the engine and the boxcar could proceed off the main line and onto the passing track.

It was dark, and switching was being accomplished by way of railroad lantern signals. Plaintiff first gave a "kick" sign to the engineer. As the engine moved forward, plaintiff attempted to pull the lever which would release the coupling mechanism and, when the engine stopped, send the chip car up the main line. The pin in the coupling mechanism did not pull, so the engine was stopped. Plaintiff then applied some different pressures and was eventually successful in pulling the pin. The pin, however, did not remain in the "up" position. During the second attempt to "kick" the car, plaintiff was forced to run alongside the car while holding the lever in the "up" position. The car was "kicked" along the main line to a point where the flagman "chopped" the wheels to prevent it from rolling back down the grade. The engine and boxcar were positioned such that the front wheels of the boxcar were directly over the switch points. Plaintiff testified he was unaware of this fact.

There is a conflict in the evidence as to what signal plaintiff then gave to the engineer. Plaintiff testified he gave "a little backup sign." The engineer testified that the next signal he received was a "come ahead" sign. According to plaintiff, he then told the head brakeman the engine and boxcar

were to be moved onto the passing track, and the brakeman acknowledged verbally. The brakeman failed to recall the exchange, but was aware the engine and boxcar were to move onto the passing track. He could not throw the switch, however, because of the positioning of the front wheels of the boxcar.

In any event, plaintiff began walking east along the south side of the main line and called to the flagman, "We are going to pull the pass." The flagman raised and lowered his lantern in acknowledgement. Plaintiff, interpreting this according to railroad signal movements as a "come ahead" signal, relayed it to the engineer. The flagman was, at that time, walking down the passing track, out of the sight of the engineer.

After relaying the signal, plaintiff was standing along the south side of the main line, facing east, away from the oncoming train movement, and was studying the switch list by the light of his lantern. As he became aware the boxcar was passing him, he was struck from behind by a steel door handle protruding from the side of the boxcar. Plaintiff was forced to the ground and sustained serious injuries to his back, neck and left knee as a result. There were no direct witnesses to the accident itself. Plaintiff has been unable to work since the accident.

Retrial was before the District Court of Cascade County, the Hon. Nat Allen presiding. Defendant admitted liability on the case and the trial proceeded on the issues of damages under the Federal Employers Liability Act (FELA) and the Federal Safety Appliance Act (FSAA), and contributory negligence.

Following deliberation, the jury returned a verdict for plaintiff in the amount of $618,000 and judgment was entered thereon. The District Court denied defendant's subsequent motion for a new trial. This appeal followed.

The issues presented for review are:

1. Did counsel for plaintiff in final argument, in effect, improperly urge the jury to assess punitive damages against defendant?

2. Did the trial court err in submitting the issue of a FSAA violation to the jury?

3. Did the trial court err in giving and refusing certain instructions?

4. Did the trial court err in permitting plaintiff to introduce into evidence, over objection, a surveillance report compiled by defendant?

5. Did the trial court err in allowing improper rebuttal testimony offered by plaintiff?

6. Was the verdict excessive, as a result of passion or prejudice?

Issue 1. Defendant Burlington Northern argues the closing statement of plaintiff's counsel contained statements which, in effect, were arguments for punitive damages, impermissible under the holding of this Court in the first McGee appeal. The jury, it is maintained, was incensed and prejudiced as a result.

The record indicates the remarks complained of were:

"* * * How can the railroad be encouraged to do these things right? How can they be encouraged not to allow rules violations? How can they be encouraged to protect their men? Well, one way is by your verdict in this case.

" * * *

"The railroad is not cheap when it comes to spending money on such things as surveillance -- surveillance of one of its own employees, that it injured through its own gross and wilful and rotten negligence * * *."

Defendant objected, on the ground the argument went to punitive damages, an impermissible element of damages in a FELA case,

- 5 -

citing as authority the first McGee opinion. The objection was overruled. Defendant's subsequent motion for a mistrial on this basis was denied. Following the courts ruling, this exchange between the court and defense counsel occurred:

> "THE COURT: No. The Court thinks you're being completely -- you're misconstruing what he said completely. He never used the word 'punitive' or any synonym thereof in his argument, did he?
>
> "MR. JOHNSON: No, he didn't, Your Honor.
>
> "THE COURT: And the Jury would fail to recognize your motion if they heard it in front of the jury as being applicable to the facts.
>
> "Your motion is denied."

This Court recently considered the effect of insertion of the element of punitive damages into the trial of a FELA action. Torchia v. Burlington Northern, Inc., _____Mont._____, 568 P.2d 558, 34 St.Rep. 1011 (1977). In Torchia, we held that offered evidence, argument and instructions relating to punitive damages or the concept of "gross and willful negligence", while having no place in a FELA action, were not a ground for reversal, as the evidence failed to establish conduct which would have supported an award of punitive damages, and the jury failed to award them. Upon a review of the instant record, it is clear the element of punitive damages, apart from the possible connotations of counsel's statements set forth above, was wholly absent at the retrial. This issue we specifically met in Torchia, adversely to the defendant's position. Hill v. Chappel Bros. of Montana,Inc., 93 Mont. 92, 18 P.2d 1106 (1932).

Issue 2. Defendant also maintains that the trial court should have granted its motion for a directed verdict on the issue of the alleged FSAA violation. The core of its argument is that there was no showing that the automatic coupler was

defective by FSAA standards, or that there existed a causal relationship between the alleged defect and plaintiff's injury, both elements being required under cases interpreting the pertinent provision of the FSAA, 45 U.S.C. §2.

During the course of trial, plaintiff attempted to show that the automatic coupler mechanism between the boxcar and the chip car was defective, in that it would not remain uncoupled during normal switching operations. Such failure was alleged to have made necessary the second "kick" and caused the wheels of the boxcar to come to rest on the switch points, such that the engine proceeded along the wrong track, eventually leading to plaintiff's injury.

Defendant produced a witness in its case-in-chief, one Orville Busch, who participated in an inspection of the car involved in the accident. His duties, as an employee of defendant, were to inspect and repair freight and passenger cars and determine whether the cars satisfied FSAA standards. Busch testified that, upon his inspection, the coupler worked properly and no portions of the mechanism were bent, broken or missing. He concluded the coupler was nondefective and, therefore, did not violate the FSAA. However, upon cross-examination, Busch indicated that where there is no abnormal condition affecting the automatic coupler mechanism, primarily its being under "stress" at the time of the attempted release, it is a violation of the FSAA if it fails to uncouple. Throughout the trial, however, it was emphasized by plaintiff that the coupler was not under stress but, rather, under compression, as the cars were being pushed, not pulled, by the engine.

The relevant section of the FSAA, 45 U.S.C. §2, provides:

"Automatic couplers. It shall be unlawful for any
common carrier engaged in interstate commerce by
railroad to haul or permit to be hauled or used on
its line any car used in moving interstate traffic
not equipped with couplers coupling automatically by
impact, and which can be uncoupled without the
necessity of men going between the ends of the cars."

The principal purpose in the enactment of 45 U.S.C. §2
was to eliminate the various risks attendant to manual coupling
and uncoupling of railroad cars, which required the employees to
go between the ends of the cars. Gentle v. Western & A.R.R., 305
U.S. 654, 59 S.Ct. 252, 83 L ed 424 (1939). The safety require-
ments of the act have been held to apply to uncoupling operations
as well as coupling operations. Louisville & N.R.Co. v. United
States, 98 C.C.A. 664, 174 F. 1021 (Ala.1909); Phillips v.
Chesapeake & O. Ry. Co., C.A. Va. 1973, 475 F.2d 22.

The duty of the railroad to provide automatic couplers which
both couple and uncouple properly is absolute, without regard
to negligence or the normal efficiency of the couplers. Affolder
v. New York C. & St.L.R.Co., 339 U.S. 96, 70 S.Ct. 509, 94 L ed
683 (1950). The fact the coupler functioned properly before or
after the incident in question is immaterial. Carter v. Atlanta
& St. A.B.Ry.Co., 338 U.S. 430, 70 S.Ct. 226, 94 L ed 236 (1949);
Phillips v. Chesapeake & O.Ry. Co., supra.

By the weight of authority, an injured employee must, as a
prerequisite to recovery, demonstrate that the violation of the
FSAA was a proximate cause of his injury. Cobb v. Union Ry. Co.,
318 F.2d 33 (C.A. Tenn. 1963), cert.den. 375 U.S. 945, 84 S.Ct.
352, 11 L ed 2d 275 (1963).

Here, plaintiff's testimony clearly indicated the coupling
device was nonoperative at the time of the incident, forcing him
to hold the lever in an "up" position while running along the side

- 8 -

of the car. Based upon the cited authority above, this in itself was a violation of the FSAA. The fact the coupler appeared non-defective upon inspection by witness Busch is immaterial. Further, it is evident the coupling mechanism was not under "stress" or other abnormal condition at the time of the attempted kick. Therefore, we conclude there was sufficient evidence of a FSAA violation to submit the issue to the jury.

It was also uncontroverted that had the coupler operated correctly, the boxcar bearing the handle which struck plaintiff would have stopped well short of the switch points upon the first kick operation. The boxcar would then have proceeded up the passing track, and plaintiff would have escaped injury, despite the protruding door handle. This, we find was a sufficient showing of proximate cause.

The issue of the alleged FSAA violation was therefore properly submitted to the jury and we refuse to disturb any findings or conclusions drawn by the jury in this regard.

Issue 3. Defendant argues that various errors allegedly committed by the trial court in giving and refusing certain instructions constitute grounds for reversal. We disagree.

Defendant contends the trial court erred in refusing to give its proposed instruction No. 19 on the ground that it was repetitious of Court's Instruction No. 18. Defendant's proposed instruction No. 19 reads:

> "In order for you to find in favor of plaintiff McGee on his claim of a Safety Applicance Act violation, plaintiff must establish by a preponderance of the evidence not only that there was a violation of the Safety Appliance Act, but also that the violation caused his injury in whole or in part. If the injury resulted from some other cause, then you must find for defendant on the Safety Appliance Act feature."

Court's Instruction No. 18 states:

"You are instructed that plaintiff McGee also claims that defendant railroad violated a law of the United States known as the Safety Appliance Act as explained to you more fully in other instructions. Plaintiff McGee claims that his injuries resulted in whole or in part from that violation.

"Defendant has also denied that it committed any Safety Appliance Act violation.

"Defendant also claims that even if it did violate any of the provisions of the Safety Appliance Act, plaintiff McGee's injuries did not result in whole or in part from the violation.

"These conflicting claims and denials present issues that you must decide."

As previously stated, recovery for a FSAA violation is predicated upon a showing of: (1) A violation of the act, and (2) injury proximately caused thereby. These elements appear in both instructions, although phrased differently. When two analogous instructions are, as here, offered, the trial court is vested with the discretion to give the instruction representing the best statement of the law to the jury. Demaree v. Safeway Stores, Inc., 162 Mont. 47, 508 P.2d 570 (1973).

Insofar as defendant's offered instruction appears to limit the concept of "proximate cause" to one of "sole cause" it was confusing, misleading and an incorrect statement of the law. Such instructions were properly refused. Long v. Byers, 142 Mont. 46, 381 P.2d 299 (1963).

The trial court also refused defendant's proposed instruction No. 25A concerning the impact of income taxes upon the damage award. Defendant aserts its proposed instruction was based upon the authority of the recent FELA case of Burlington Northern Inc. v. Boxberger, 9th Cir. 1975, 529 F.2d 284, and its refusal was error.

In rejecting the instruction, the trial court was in accord with the majority of decisions on the point. See: Torchia v. Burlington Northern, Inc., supra. We reaffirm our prior holding that future income tax liability is an improper consideration in formulating an award for loss of future earnings. Bracy v. Great Northern Ry. Co., 136 Mont. 65, 343 P.2d 848 (1959).

Defendant further argues the trial court erroneously gave an instruction which constituted a comment on the evidence, in effect directing the jury to find for plaintiff on the issue of the FSAA violation.

The instruction in question, given as Court's Instruction No. 20 states:

"The Safety Appliance Act imposes an absolute duty, not based on negligence, upon the railroad to provide its cars with an uncoupling device which operates efficiently at the time of the accident. If you should find from the evidence that plaintiff operated the uncoupling device in the usually accepted and customary manner and the uncoupler failed to immediately respond in an efficient manner, the railroad was in violation of the Safety Appliance Act. It is no defense that the railroad had no knowledge of a particular defect in the uncoupling device as the railroad is charged with knowledge of the defect as though it actually had it. It is immaterial that no defect was found in the uncoupling device.

"It is immaterial that the uncoupler functioned properly before or after the accident.

"If you should find that the railroad violated the Safety Appliance Act, then you may not reduce plaintiff's damages on account of any contributory negligence on the part of plaintiff.

"Should you find a violation of the Safety Appliance Act, the only further question insofar as the Safety Appliance Act is concerned is did the violation play any part, no matter how small, in producing the injury."

Defendant's objection to this instruction is without merit. The instruction is a correct restatement of all relevant rules emerging from accepted case authorities. Plaintiff submitted to the jury evidence tending to prove an actionable FSAA violation

and was entitled to an instruction adaptable to his theory of the case. Williams v. Montana National Bank of Bozeman, 167 Mont. 24, 534 P.2d 1247 (1975); Meinecke v. Skaggs, 123 Mont. 308, 213 P.2d 237 (1949).

The trial court also gave, as Court's Instruction No. 4, an instruction concerning plaintiff's use of ordinary care to avoid known dangerous conditions tortiously created by defendant. Defendant argues the instruction is an incorrect statement of the law, confusing, and inapplicable to the facts of the case.

The instruction refers to contributory negligence, potentially at issue in the instant case. Plaintiff steadfastly maintained his absolute lack of fault in bringing about the injury. The instruction is in accord with the theory as advanced by plaintiff. The giving of such instruction is not reversible error, absent a showing that the jury was misled by it. O'Brien v. Great Northern Ry. Co., 145 Mont. 13, 400 P.2d 634 (1965).

Issue 4. During plaintiff's case, the trial court permitted introduction, over objection, of the body of a surveillance report compiled by defendant's claims department. The report had been properly discovered and was considered by plaintiff to be helpful to his case. Defendant had, in advance of trial, sought a motion in limine to prevent introduction of the report. The motion was denied. Defendant now puts forward this permitted introduction as error.

Defendant maintains the sole purpose for the report is its use for possible impeachment of a plaintiff's trial testimony concerning his injuries, in a personal injury or related action. Defendant urges the report in this case, containing no potential impeachment material, should not have been admitted into evidence. We cannot sustain such a position.

- 12 -

Certainly, an essential issue of plaintiff's case was whether he was injured and, if so, to what extent. Here, that defendant engaged in surveillance, a common practice in similar actions, indicates that defendant hoped to demonstrate the contrary.

Evidence may be both relevant and irrelevant, depending upon the purpose for which it is offered, and the fact or facts it is to prove. Here, plaintiff offered the surveillance report, properly discovered, as proof of the fact and extent of his injuries.

Section 93-401-27, R.C.M. 1947, provides, in part:

"* * * evidence may be given upon a trial of the following facts:

"1. The precise fact in dispute.

"* * *

"15. Any other facts from which the facts in issue are presumed or are logically inferable.

"16. Such facts as serve to show the credibility of a witness * * *."

The report was clearly relevant to plaintiff's proof of injuries under subsections 1 and 15, section 93-401-27. We find it was admissible, to the same extent it would have been admissible had the results been favorable to defendant and the report offered to impeach plaintiff's credibility under subsection 16, section 93-401-27.

Issue 5. Defendant next contends the trial court erroneously permitted improper rebuttal testimony by plaintiff's witness in the field of economics.

Counsel for defendant was permitted, by stipulation, to read into the record during the course of defendant's case, figures concerning the average income tax to which plaintiff's

annual income would be subject. On rebuttal, plaintiff was allowed to introduce testimony from an economics expert regarding the impact of income taxes. Counsel for plaintiff was permitted, over objection, to question the witness concerning the future earnings of a hypothetical railroad employee in the position of plaintiff, for purposes of foundation. Plaintiff had not introduced similar testimony in his case-in-chief.

Defendant's argument in this regard is that, having limited its testimony to matters involving the effect of income taxation alone, plaintiff's rebuttal testimony should have been restricted to rebutting some portion of defendant's offered evidence. It is argued the permitted testimony far exceeded the scope of the direct testimony introduced by defendant.

Admission of rebuttal evidence is a matter resting largely within the discretion of the trial court. Only when it is shown that such discretion has been abused, will the decision be reviewed. State Highway Commission v. Ostwalt, 153 Mont. 83, 454 P.2d 605 (1969); Morrison v. City of Butte, 150 Mont. 106, 431 P.2d 79 (1967). The generally accepted test for determining whether certain rebuttal evidence is proper is whether it tends to counteract new matters offered by the adverse party. Gustafson v. Northern Pacific Ry. Co., 137 Mont. 154, 351 P.2d 212 (1960).

Here the subject of the effect of income taxation upon plaintiff's earning capacity was first developed by defendant, during the course of its case. We hold the subject of plaintiff's earnings and potential tax liability was sufficiently "opened up" and that the testimony offered by plaintiff on rebuttal was proper. We find no abuse of discretion on the part of the trial court in admitting such testimony.

Issue 6. Finally, defendant contends the verdict should be overturned by this Court as being excessive, resulting from passion or prejudice. It is submitted the cumulative effect of the numerous alleged trial errors engendered an atomosphere of prejudice against defendant and, further, there is no credible evidence in the record to support a verdict as large as $618,000.

The proper standard for determining whether the evidence presented by a plaintiff in a FELA action is sufficient to support a verdict is set forth in Torchia v. Burlington Northern, Inc., supra, quoted from Lavender v. Kurn, 327 U.S. 645, 66 S. Ct. 740, 90 L ed 916,923 (1946):

> "' * * * Only where there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where * * * there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent * * *.'"
> 34 St.Rep. 1016; 568 P.2d 563.

The FELA standard outlined above is no less applicable to FSAA actions or a combined action under both acts, as here.

We have, in this opinion, determined there was sufficient admissible evidence of a FSAA violation and resulting damage for submission of the issue to the jury. Plaintiff's evidence of the FELA violation was uncontradicted as was his evidence concerning the various items of damage, including pain and suffering. None of the damage figures so introduced were contested by defendant during the trial.

We can discern no basis on defendant's final issue to disturb the verdict of the jury.

The judgment entered upon the jury verdict is affirmed.

_____
Justice

- 15 -

We Concur:

_Frank I. Haswell_

_Gene B. Daly_

_Daniel J. Shea_
Justices.

_M. James Sorte_
Hon. M. James Sorte, District
Judge, sitting for Mr. Chief
Justice Paul G. Hatfield.