### MARK DENNIS BATSON, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 27353

June 17, 1997                    941 P.2d 478

---

*Michael Specchio,* Public Defender and *John Reese Petty,* Chief Appellate Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, Rose, J.:

Reno Police Department Officer Robert Tygard (Tygard), was one of several policemen to respond to a fight between Mark Batson (Batson) and a neighbor at a Reno trailer park. When Tygard arrived at the scene, the fighting parties had been separated, and he proceeded to meet with Batson and his wife, Donna Batson (Donna). Tygard had Batson sit down on a low outside wall (the parties label it a "stem wall") by the Batsons' trailer, while Tygard (with his back towards Batson) attempted to talk to a distraught Donna. Donna was extremely agitated about the fight between Batson and their neighbor and was flailing her arms. Tygard tried to calm Donna down and guide her to the wall where Batson was seated. As Tygard was guiding Donna towards the wall, Batson jumped off the wall and struck Tygard twice, breaking Tygard's jaw. Batson was tried and convicted of one count of battery on a police officer causing substantial bodily harm, and was sentenced to six years imprisonment and ordered to pay restitution in the amount of $12,859.98. Batson appeals his conviction and sentence.

### FACTS

On July 31, 1993, at approximately 8:00 p.m., Officer Tygard responded to a report of a fight in progress where a shot had been fired, at a trailer park located at 600 Newport Lane in Reno. It was later determined that no shots had been fired and that the sound like a gunshot was actually a window breaking. Tygard was in the second of six or more patrol cars to respond to the scene. One group of officers was already talking to one of the men involved in the altercation at the bottom of a hill, and Tygard and another officer, Paul Kisner, went up the hill to interview Batson—the other participant in the alleged fight—at the Batsons' trailer.

Tygard testified that Batson appeared disheveled but uninjured; however, Donna testified that Batson had been bleeding. Batson sat down on a low wall about ten yards away from and behind Tygard. Tygard had turned his attention to Donna, who was distressed, "crying and flailing her arms around." Tygard testified that he then tried to get Donna to calm down and sit next to her husband, first by verbal request, and then by using a "light touch"[1] to her wrist and elbow to guide her to the wall. Tygard heard Batson yell "Get your f---ing hands off my wife!" and was then struck on the side of his head from behind; Tygard fell to the ground, reached for his cap stun, turned around, and was again struck in the face by Batson. Tygard's version of what transpired at the trailer park is corroborated by the testimony of several other officers who were at the scene.

However, according to Donna and Batson, Donna had been attempting to get to Batson when Tygard grabbed her right arm from behind her back and "wrenched [it] up behind [her] back, [while] another arm came around [her] throat from behind." Donna then screamed for help "because [Tygard] was breaking [her] arm." Donna testified that Batson immediately came to her aid but was subdued by other officers; she did not know whether Batson had struck Tygard.

Batson testified that he had been feeling faint from his fight when Tygard arrived outside the Batsons' trailer, so he sat down on the stem wall. Batson then heard his wife scream in pain. According to Batson, Donna was:

> Very much in pain. From—she was being choked to unconsciousness [by Tygard]. She couldn't breathe. Her face turned solid red. Her arm was twisted up behind her back beyond the point of normal use, so—and her screaming for help was the last point that I—that's all it took for me when she screamed for help, I couldn't sit there and watch any longer.
>
> . . . .
>
> I stood up and took a couple of steps towards Officer Tygard and my wife. At that point I wasn't really sure what I was going to do. He [Tygard] had her in such a tight hold, that even trying to use physical restraint to try and stop him would have possibly injured my wife and would have possibly broke her arm, because he had it that far up behind her back.
>
> But all I remember is taking two steps and getting hit from behind the back of the head by somebody else . . . .

---

[1]Tygard described a light touch as "the same motion that you would use as if you are escorting somebody to a car. . . . [Y]ou use it to guide someone to where you want them to go."

And I got up, took two steps, and I went black. All I remember was falling forward, and falling into Officer Tygard and my wife. . . . It was like I went black.

. . . .

I woke up being hog tied and shackled with Officer O'Bryan's foot dead on the back of my neck, with my face planted dead in the hard ground.

According to Officer Pat O'Bryan, who was down the hill interviewing the other person involved in the fight with Officers Robert Alexander, Greg Meister, and several other policemen, he saw Batson hit Tygard from behind. O'Bryan and several other officers ran to Tygard's aid, tackling Batson. Donna then jumped on the backs of the officers in an attempt to pull them away from Batson. Donna was restrained and taken into custody. Batson was cuffed and placed in a police van where he continued to struggle and kick at the vehicle's doors. The officers then hobbled Batson's feet to further restrain him. Tygard was taken by ambulance to Washoe Medical Center where he was treated for a severely fractured jaw.

On the day of Batson's trial, his counsel moved for a continuance for an indefinite period of time in order to further investigate information indicating that Tygard had been found liable for invasion of privacy for breaking into someone's house in an unrelated civil case in federal court. The judge denied Batson's motion. Batson argues that the judge erred in its ruling. Batson also claims that the "reasonable doubt" jury instruction given at trial was unconstitutional. He further asserts that the lower court erred in rejecting his proposed "defense of others" jury instruction, and in permitting the prosecution to present cumulative evidence as rebuttal testimony. Because we conclude that the district court did not err, we affirm Batson's conviction and sentence.

## DISCUSSION

*The district court properly denied Batson's request for a continuance*

On Monday, May 1, 1995, the day of Batson's trial, after the venire had been assembled but before the jury had been empaneled, Batson moved for a continuance for an unspecified period of time. Batson's counsel claimed to have received information on the previous Friday that Tygard had been found liable in a federal civil suit against the City of Reno for invading someone's privacy by wrongfully breaking into a house to conduct a search. The district judge asked Batson's counsel whether Batson had known about the charges pending against Tygard on July 31, 1993, the date he allegedly battered Tygard. Batson's counsel acknowl-

edged that Batson had not been aware of the civil claims against Tygard.

The State argued and the district judge concluded that the information Batson sought a continuance to produce was irrelevant, and thus inadmissible. *See* NRS 48.025(2). The judge based his ruling, in part, on Burgeon v. State, 102 Nev. 43, 46, 714 P.2d 576, 578 (1986), which held that where the defendant alleged self-defense, specific, violent acts of the victim which were unknown to the defendant were inadmissible to establish the reasonableness of defendant's fear or state of mind.

On appeal, Batson asserts that *Burgeon* is inapplicable because he was not acting in self-defense but in defense of his wife, Donna.[2] He argues Tygard's civil liability for invasion of privacy "may have been relevant *not* to show prior violence on the part of [Tygard]. . . . Rather it may have been relevant to impeach Officer Tygard's contention that he had merely applied a 'light touch' to [Donna]." We conclude that Batson's argument is without merit.

"It is well settled that the granting of a motion to continue is within the sound discretion of the trial court." Doleman v. State, 107 Nev. 409, 416, 812 P.2d 1287, 1291 (1991). The district judge did not abuse his discretion in concluding that the information Batson sought to pursue was irrelevant, inadmissible, and thus did not warrant the granting of a continuance. That Tygard may have invaded someone's privacy at some previous time did nothing to support Batson's theory of defense; it did not tend to make it more likely than not that Tygard was in fact exerting something more than a "light touch" on Donna, or that Batson thought or had reason to believe that Tygard was abusing his wife. Accordingly, we hold that the district judge did not err in denying Batson's motion for a continuance.

*The "reasonable doubt" instruction given to the jury did not violate Batson's due process rights*

Batson contests the constitutionality of the "reasonable doubt" instruction given to his jury in as much as it defined reasonable doubt as "such doubt as would govern or control a person in the more weighty affairs of life."

[2]Batson makes a specious distinction; as other jurisdictions have noted, one who would come to the defense of others must stand in the shoes of the person being defended. *See* State v. Wenger, 390 N.E.2d 801, 804 (Ohio 1979). Thus, Batson could only rely on the privilege of defense of others to the extent that Donna could have invoked the privilege of self-defense against Tygard.

The district court instructed the jury using the language required by NRS 175.211. This court has "repeatedly held that jury instructions on reasonable doubt given pursuant to NRS 175.211 are constitutional." Milton v. State, 111 Nev. 1487, 1492, 908 P.2d 684, 687 (1995) (footnote omitted). Therefore, this claim is without merit.

*Batson's proposed jury instruction on "defense of others" was properly rejected by the district court*

At trial, Batson offered the following instruction regarding the defense of others:

> It is lawful for a person who, as a reasonable person, has grounds for believing and does believe that bodily injury is about to be inflicted upon his spouse to protect that individual from attack. In doing so he may use all force and means which such person believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

The district judge rejected this instruction, and the only instruction which mentioned the words "self-defense" or "defense of another" stated:

> If evidence of self-defense or defense of another is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense or in defense of another. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense or defense of another, you must find the defendant not guilty. In other words, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty.

Batson asserts that the lower court erred in rejecting his proposed "defense of others" instruction because a "defendant in a criminal case is entitled, upon request, to a jury instruction on his theory of the case so long as there is some evidence, no matter how weak or incredible, to support it." Roberts v. State, 102 Nev. 170, 172-73, 717 P.2d 1115, 1116 (1986). He asserts that because Batson and Donna presented evidence that Batson was acting in Donna's defense, the proffered instruction was warranted because the jury received no other instruction on what constituted "self-defense" or "defense of another."

We agree with Batson that a defendant in a criminal case is

entitled to a jury instruction on his theory of his case; however, the proposed instruction must "correctly state the law." Barron v. State, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989). The state asserts that Batson's defense of others instruction did not correctly state the law in that "[t]he proposed instruction would have allowed Mr. Batson to use force to prevent Tygard from *lawfully* detaining [Donna]. It would, in essence, allow any husband to rescue his spouse from the lawful clutches of the law." (Emphasis added.)

Whether (and under what conditions) an individual can exert force against a police officer in the defense of others is a question of first impression in Nevada. Today we hold that a person may defend another only where that person has witnessed a police officer's unlawful and excessive use of force, and only where the individual being "rescued" is facing imminent and serious bodily harm at the hands of the police officer.[3] *See* Commonwealth v. French, 611 A.2d 175, 179 (Pa. 1992). Furthermore, an individual acting in defense of another against a police officer may only use that force reasonably necessary to remove the threat of imminent serious bodily harm to that other person. *See* State v. Smits, 792 P.2d 565, 569 (Wash. Ct. App. 1990).

"[I]t has been held that where the defendant in a criminal case proves facts or circumstances to excuse his act which otherwise would in and of itself be a crime, or the specific issue is one of criminal intent, such as where there is a claim of . . . self-defense . . ., ordinarily an affirmative instruction should be given." 75B Am. Jur. *Trial* § 1259 (1992). However, the settling of jury instructions was not reported in the record on appeal, and there is no record that Batson objected, nor is there any rationale for why Batson's counsel did not submit an alternate jury instruction. The jury was at least instructed that defense of another was a complete

---

[3]In State v. Smithson, 54 Nev. 417, 428, 19 P.2d 631, 634-35 (1933) (quoting Adams v. State, 57 So. 591, 592 (Ala. 1912)), this court set forth a standard of self-defense against a police officer:

"The citizen may resist an attempt to arrest him which is simply illegal, to a limited extent, not involving any serious injury to the officer. He is not authorized to slay the officer, except in *self-defense*; that is when the *force used against him is felonious, as distinguished from forcible*."

(Emphasis added.) Batson could only exert that force which Donna was justified in exerting. We conclude that the language of *Smithson* describes the right to defend oneself or act in defense of another against police officers too broadly. Accordingly, *Smithson* is overruled to the extent that it justifies the use of any force in response to anything less than a police officer's use of unlawful and excessive force.

defense to the crime charged, and this general statement was more favorable to Batson than the language of the standard we adopt today.[4] Moreover, Batson has "not sustained [his] burden of showing that a different result would have been obtained had the proposed instruction been given." *Barron,* 105 Nev. at 777, 783 P.2d at 451. Furthermore, Batson's testimony was that he fell into Officer Tygard and his wife, not that he hurt Officer Tygard in defense of his wife. We conclude that, on the instant facts, even if the jury had been given a definition of the theory of defense of others which properly stated the law, the jury would have still found Batson guilty. Therefore, Batson's claim must fail.

*Permitting cumulative evidence to be presented by the prosecution as rebuttal testimony did not constitute reversible error*

Following the close of Batson's case in chief, the State called Officer Alexander in rebuttal. Both parties concede that Alexander's testimony was, for the most part, cumulative and "added little of substance to the prosecution's case," although Alexander did add that he had not seen Tygard choke Donna. As an initial matter, Batson failed to object to Alexander's testimony and therefore, this court need not address this claim. *See* McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983) (stating that the failure to object below bars appellate review).

Notwithstanding, we turn to the merits of Batson's claim. Batson quotes Morrison v. Air California, 101 Nev. 233, 699 P.2d 600 (1985), for the principle that "[r]ebuttal evidence is that which explains, repels, contradicts or disproves evidence introduced by a defendant during his case in chief. The general rule for determining whether certain rebuttal evidence is proper is 'whether it tends to counteract new matters by the adverse party.' " *Id.* at 235-36, 699 P.2d at 602 (quoting McGee v. Burlington Northern, Inc., 571 P.2d 784 (Mont. 1977)) (citations omitted). In response, the State argues that allowance of rebuttal testimony is addressed to the lower court's sound discretion, and that the trial court's decision is subject to the harmless error standard. *Morrison,* 101 Nev. at 237, 699 P.2d at 603.

We conclude that even if the lower court abused its discretion in allowing Alexander's largely cumulative testimony, in which he reiterated the testimony of Officers Tygard and O'Bryan, such

---

[4]In fact, the instruction given was much closer in effect to the version Batson proposed.

error was harmless and reversal on this ground is not warranted. *See* Felder v. State, 107 Nev. 237, 242, 810 P.2d 755, 758 (1991) (holding that admission of cumulative evidence was harmless).

## CONCLUSION

We conclude that the district court did not err in denying Batson's motion for a continuance to pursue irrelevant evidence, nor did it err in giving a "reasonable doubt" instruction which conformed with NRS 175.211. We further conclude that Officer Alexander's cumulative rebuttal testimony constituted harmless error. Batson's proffered instruction on defense of others was properly rejected as a misstatement of the law. We further conclude that even if a proper instruction on this theory had been given, in light of the overwhelming evidence, Batson would have still been convicted by the jury. Therefore, we affirm Batson's conviction.

SHEARING, C. J., and ROSE and MAUPIN, JJ., concur.

SPRINGER, J., dissenting:

The majority opinion recognizes that "[w]hether (and under what conditions) an individual can exert force against a police officer in the defense of others is a question of first impression in Nevada." In other words, when Mr. Batson was defending against these criminal charges neither he nor his prosecutor (nor this court) knew what the law was relating to the sole defense which Batson offered in this case.

Now, of course, we all know what the law is. It has been declared by the court in this case: "*[A] person may defend another only where that person has witnessed a police officer's unlawful and excessive use of force, and only where the individual being 'rescued' is facing imminent and serious bodily harm at the hands of the police officer.*" Mr. Batson was most certainly engaged in the act of "rescuing" his wife from what he saw as the use of unlawful and excessive force which he believed was causing serious bodily harm to his wife. The problem with this conviction is that no matter what the jury believed, it could not have, under the instructions given in this case, conscientiously brought in a verdict of acquittal. The jury simply was not instructed on the meaning or definition of Mr. Batson's affirmative defense. I do not believe that Mr. Batson should stand convicted of this serious crime until he has had the opportunity to have a jury judge him in a manner that is based on the law of Nevada. At this writing he has been denied that right.

This is not by any means a clear case of guilt. Mr. Batson's wife claims that she was the subject of an unprovoked attack by Officer Tygard. Officer Tygard testified that he was merely trying

to calm down an hysterical woman who was "crying and flailing her arms around." The officer claims that the physical force he used upon Mr. Batson's wife was minimal, merely a "light touch." The Batsons claim that Officer Tygard had "wrenched" Mrs. Batson's arm up behind her back and had placed his arm around her throat from behind. Whether the jury believed that the officer only "touched" Mrs. Batson or dangerously wrenched her arm in back of her and had a throat hold on her that kept her from breathing does not matter in this case because the jury was given no definition or explanation of the conditions under which Mr. Batson was legally entitled to defend his wife. The jury was merely instructed on the burden of proof and told that "the State must prove beyond a reasonable doubt that the defendant did not act . . . in defense of another." The jury was not told what "defense of another" was or when a person had the right to defend one's loved one against unlawful and excessive police violence. Mr. Batson did not get a fair trial because the jury was never instructed on his theory of the case.

As stated in the majority opinion, the Batsons tell a story of an annoyed police officer who over-reacted to Mrs. Batson's emotional state. Mr. Batson claims that he saw his wife in great pain, that she was "being choked unconscious," that her "arm was twisted up behind her back beyond the point of normal use," and that she was "screaming for help." Almost any husband would have tried to do something to come to the rescue of his wife under these circumstances. Even, however, if the jury believed everything that the Batsons told them, a conscientious jury had no basis for acquitting Mr. Batson under the instructions given to this jury.

I do not see how the majority can affirm a conviction by a jury that did not know the law. All Mr. Batson asks for is a fair trial in which a jury is correctly told of the essence of his defense, namely, under what conditions Mr. Batson was entitled to come to the rescue of his wife in this case. I would reverse the judgment of conviction and remand the case for a new trial before a correctly-instructed jury.